Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

September 14, 2020

**2020 CO 74**

**No. 18SC923, *People v. Rigsby*—Mutually Exclusive Verdicts—Legally Consistent Verdicts—§ 18-1-503(3), C.R.S. (2019)—Double Jeopardy—Multiplicity and Merger.**

A jury found the defendant guilty of two counts of second degree assault and one count of third degree assault based on the same criminal conduct.  On appeal, a division of the court of appeals concluded that the guilty verdicts for second degree assault, on the one hand, and the guilty verdict for third degree assault, on the other, were mutually exclusive.  The division reasoned that the guilty verdicts could not be reconciled because the second degree assault convictions required the jury to find that the defendant acted intentionally and recklessly and was thus aware of the risk of bodily injury, while the third degree assault conviction required the jury to find that the defendant acted with criminal negligence and was thus unaware of the risk of bodily injury.  Therefore, the division vacated the judgment of conviction and remanded for a new trial.

The supreme court reverses the division's judgment. Section 18-1-503(3), C.R.S. (2019), sets up a hierarchical system of culpable mental states in which: (1) "intentionally" or "with intent" is the most culpable, "knowingly" is the next most culpable, "recklessly" is the next most culpable, and "criminal negligence" is the least culpable; and (2) proving a culpable mental state necessarily establishes any lesser culpable mental state(s). Pursuant to section 18-1-503(3), then, by returning a guilty verdict on count 1 and finding that Rigsby acted with intent, the jury, as a matter of law, necessarily found that he acted with criminal negligence, and by returning a guilty verdict on count 2 and finding that Rigsby acted recklessly, the jury, as a matter of law, necessarily found that he acted with criminal negligence. Hence, even if each of the guilty verdicts for second degree assault is *logically* inconsistent with the guilty verdict for third degree assault, no *legal* inconsistency exists. And guilty verdicts that are legally consistent are not mutually exclusive.

Despite finding that the guilty verdicts are not mutually exclusive, the supreme court holds that the trial court entered multiplicitous convictions, thereby violating the defendant's right to be free from double jeopardy. Accordingly, the supreme court remands to the court of appeals with instructions to return the case to the trial court to merge the convictions into a single second degree assault

conviction and to leave in place only one sentence (one of the two concurrent five-year prison sentences imposed).

**2020 CO 74**

**Supreme Court Case No. 18SC923**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA138

**Petitioner:**

The People of the State of Colorado,

**v.**

**Respondent:**

Derek Michael Rigsby.

**Judgment Reversed**
*en banc*
September 14, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Jillian J. Price, Senior Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Jessica Sommer, Deputy Public Defender
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents.

¶1     The People charged Derek Michael Rigsby with three felony counts of second degree assault for smashing a glass into someone's face during a bar fight. The three charges represented alternative methods of committing the same crime. The jury found Rigsby guilty as charged on the first two counts: (1) second degree assault (acting with intent to cause bodily injury and causing serious bodily injury); and (2) second degree assault (acting recklessly and causing serious bodily injury with a deadly weapon). On the third count, second degree assault (acting with intent to cause bodily injury and causing bodily injury with a deadly weapon), the jury returned a guilty verdict on the lesser included offense of third degree assault (acting with criminal negligence and causing bodily injury with a deadly weapon), a misdemeanor; in so doing, the jury necessarily acquitted Rigsby of the charged offense on that count.

¶2     Concluding that the guilty verdicts for second degree assault, on the one hand, and the guilty verdict for third degree assault, on the other, were mutually exclusive, a division of the court of appeals reversed the judgment of conviction and remanded for a new trial. The division determined that the guilty verdicts could not be reconciled because the second degree assault convictions required the jury to find that Rigsby acted intentionally and recklessly and was thus aware of the risk of bodily injury, while the third degree assault conviction required the jury to find that Rigsby acted with criminal negligence and was thus unaware of the

2

risk of bodily injury. In the division's view, the guilty verdicts for second degree assault negated the guilty verdict for third degree assault and vice versa.

¶3 The People concede that the judgment of conviction entered by the trial court was defective, but argue that the error was one of multiplicity, not mutually exclusive verdicts, and that it should be corrected by merging the three guilty verdicts. We agree.

¶4 Pursuant to section 18-1-503(3), C.R.S. (2019), proving the mental state required for each of the second degree assault convictions ("intentionally" or "with intent" for one and "recklessly" for the other) necessarily established the mental state required for the third degree assault conviction ("criminal negligence"). Therefore, even if each of the guilty verdicts for second degree assault is *logically* inconsistent with the guilty verdict for third degree assault, no *legal* inconsistency exists. Accordingly, the division was mistaken in determining that the trial court accepted mutually exclusive verdicts.

¶5 We nevertheless conclude that the trial court erred by entering multiplicitous convictions, which violated Rigsby's right to be free from double jeopardy. We thus remand to the court of appeals with instructions to return the case to the trial court to merge all of the convictions into a single conviction for second degree assault and to leave in place only one sentence (one of the two concurrent five-year prison sentences imposed).

## I. Facts and Procedural History

¶6 Rigsby, his girlfriend, and two of their friends (a man and a woman) went to a bar. While Rigsby's girlfriend and her female friend stood on the dance floor, Nathan Mohrman and his male friend began talking to them. What followed was disputed at trial. However, there was no disagreement that a confrontation ensued shortly thereafter between Rigsby and Mohrman during which Rigsby struck Mohrman in the face with the glass Rigsby was holding in his hand. Mohrman's resulting injury required several stitches.

¶7 The People subsequently charged Rigsby with second degree assault, a felony. Because they proceeded under three alternative theories of liability, however, they filed three separate charges: count 1, second degree assault (acting with intent to cause bodily injury and causing serious bodily injury); count 2, second degree assault (acting recklessly and causing serious bodily injury with a deadly weapon); and count 3, second degree assault (acting with intent to cause bodily injury and causing bodily injury with a deadly weapon). On the first two counts, the jury found Rigsby guilty as charged. On count 3, the jury acquitted Rigsby of the charged offense, but returned a guilty verdict on the lesser included offense of third degree assault (acting with criminal negligence and causing bodily

injury with a deadly weapon).[1] The trial court later sentenced Rigsby to five years in prison on each of the two felonies and to sixty-six days in jail on the misdemeanor, with all of the sentences to be served concurrently.

¶8     Rigsby appealed his convictions. As relevant here, he contended that the verdicts were mutually exclusive because counts 1 and 2 required the jury to determine that he acted intentionally and recklessly and was thus aware of the risk of bodily injury, but the lesser included offense on count 3 required the jury to determine that he acted with criminal negligence and was thus unaware of the risk of bodily injury. In a published opinion, the division unanimously agreed with Rigsby. *People v. Rigsby*, 2018 COA 171, ¶ 1, __ P.3d __. It held that, while the convictions for second degree assault were consistent with each other, Rigsby could not simultaneously stand convicted of those offenses, which required proof that he acted intentionally and recklessly, and of third degree assault, which required proof that he acted with criminal negligence. *Id.* at ¶ 14. Elaborating, the division explained that to act intentionally or recklessly requires that a defendant act with knowledge of a result or potential result, while to act with criminal

---

[1] The trial court instructed the jury on the lesser included offense on count 3 at Rigsby's request. On count 2, the trial court instructed the jury, again at Rigsby's request, on the lesser included offense of third degree assault (acting recklessly and causing bodily injury).

negligence requires that a defendant act without such knowledge. *Id.* at ¶ 13. The division reasoned that "separate convictions for both knowing and negligent mental states for the same act"—hitting Mohrman in the face with a glass—could not be sustained because someone cannot concomitantly "consciously act" despite being aware of the risk and "fail to perceive [that] risk." *Id.*

¶9 Believing the guilty verdicts for second degree assault, on the one hand, and the guilty verdict for third degree assault, on the other, to be mutually exclusive, the division found that the former negated the latter and vice versa. *Id.* at ¶ 15. Addressing the proper remedy, the division ruled that it had to set aside the convictions and remand the case for a new trial because there was no way to discern the jury's intent. *Id.* at ¶¶ 16–19.

¶10 The People timely petitioned our court for certiorari. And we granted their petition.[2]

---

[2] Here are the two issues we agreed to review:

1. Whether the court of appeals erred in concluding the jury's verdicts finding defendant guilty of both second degree assault and third degree assault were inconsistent under *People v. Frye*, 898 P.2d 559 (Colo. 1995).

2. Whether the court of appeals erred by reversing for a new trial for inconsistent jury verdicts, instead of maximizing the jury verdicts by affirming the most serious conviction.

## II. Standard of Review

¶11 Whether verdicts are mutually exclusive is a question of law. *People v. Delgado*, 2019 CO 82, ¶ 13, 450 P.3d 703, 705. We review questions of law de novo. *Id.*

¶12 The People maintain that even if we find, as the division did, that the trial court accepted mutually exclusive verdicts, we should determine that the error wasn't plain and doesn't require reversal. The plain error standard of reversal applies, according to the People, because Rigsby failed to preserve his claim. We disagree with the People's preservation contention.

¶13 Immediately after the jury returned its verdicts and was discharged, Rigsby moved for a new trial on the ground that the culpable mental states required for the guilty verdicts were mutually exclusive. In the court of appeals, the People explicitly agreed that Rigsby preserved this claim. The People do not explain why they now take a diametrically opposed position. And the record supports the People's earlier concession.

¶14 In any event, preservation is of no moment because the error that did occur was one of multiplicity, which violates the Double Jeopardy Clauses of the federal and state constitutions and requires a remedy. *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 81, 390 P.3d 816, 828. Hence, even if Rigsby had failed to preserve his claim, he would still be entitled to relief. *See id.*

## III.  Analysis

## A.  The Verdicts Are Not Mutually Exclusive

¶15     Courts have historically given deference to the jury's fact-finding authority. *See, e.g.*, *People v. Frye*, 898 P.2d 559, 567 (Colo. 1995).  In line with such deference, some eighty-eight years ago, both the Supreme Court and our court held that a defendant who is convicted on one count may not attack that conviction on the ground that it is inconsistent with the verdict of acquittal on another count.  *See Dunn v. United States*, 284 U.S. 390, 393 (1932) (holding that consistency in verdicts is not necessary); *Crane v. People*, 11 P.2d 567, 568–69 (Colo. 1932) (adopting the holding in *Dunn*).  In 1984, the Supreme Court reaffirmed the rule in *Dunn* as "rest[ing] on a sound rationale," *United States v. Powell*, 469 U.S. 57, 64 (1984), and eleven years later, we reaffirmed the rule in *Crane* as being aligned with "the federal rule . . . articulated in . . . *Powell*," *Frye*, 898 P.2d at 571.[3]

¶16     But the Court in *Powell* cautioned that it was not resolving a situation where a defendant is convicted of two crimes and a guilty verdict on one count excludes

---

[3] This line of cases renders inconsequential any inconsistency between the guilty verdicts on the first two counts and the acquittal of the charged offense on the third count.  We recognize that these types of inconsistencies between guilty and acquittal verdicts "often are a product of jury lenity," *Powell*, 469 U.S. at 65, and do not prove that the jury was "not convinced of the defendant's guilt," *Dunn*, 284 U.S. at 393.

8

a finding of guilt on the other. *Powell*, 469 U.S. at 69 n.8. And we took note of this limitation in *Frye*. 898 P.2d at 569 & n.13. In such situations, we observed, "courts are generally uniform in their agreement that the verdicts are legally and logically inconsistent and should not be sustained." *Id.* at 569 n.13.

¶17 Just last term, we were confronted with the type of case *Powell* and *Frye* excluded from the scope of their holdings. *See Delgado*, 2019 CO 82, 450 P.3d 703. In *Delgado*, we held that guilty verdicts for robbery and theft vis-à-vis a single taking were mutually exclusive and could not be upheld. *Id.* at ¶ 3, 450 P.3d at 704. We noted that it was impossible for the defendant to have unlawfully taken items from the victim by force, as required by robbery, and also without force, as required by theft. *Id.* Such verdicts, we reasoned, flew in the face of due process because each offense included an element that negated an element of the other offense, which meant that the prosecution had necessarily failed to prove at least one element of each offense beyond a reasonable doubt. *Id.* at ¶¶ 23, 27–28, 450 P.3d at 707–08. We explained that the establishment of every element of robbery (including the use of force) had necessarily negated the element of theft that required the use of any means other than force, and, conversely, the establishment of every element of theft (including the use of any means other than force) had necessarily negated the element of robbery that required the use of force. *Id.*

9

¶18    Significantly, in arriving at our decision in *Delgado*, we undertook an elements-based analysis. *Id.* at ¶ 20, 450 P.3d at 707. We did so based in part on our comment in *Frye* that a jury returns mutually exclusive guilty verdicts "where the existence of an *element* of one of the crimes negates the existence of a necessary *element* of the other crime." *Id.* (quoting *Frye*, 898 P.2d at 569 n.13). Thus, to determine whether two guilty verdicts are mutually exclusive, we must compare the statutory elements of the underlying crimes. *Id.* at ¶ 27, 450 P.3d at 707.

¶19    Focusing on the statutory language defining each of the three crimes implicated here, the division correctly stated that: count 1 required a finding that Rigsby acted *with intent* to cause Mohrman bodily injury; count 2 required a finding that Rigsby *recklessly* caused Mohrman serious bodily injury; and count 3 required a finding that Rigsby acted *with criminal negligence* in causing bodily injury to Mohrman. *Rigsby*, ¶ 10. Under section 18-1-501(5), C.R.S. (2019), a person acts "intentionally" or "with intent" when "his conscious objective is to cause the specific result proscribed by the statute defining the offense," regardless of "whether . . . the result actually occurred." Under subsection (8) of that statute, a person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." And under subsection (3) of the same statute, a person acts with "criminal negligence" when, "through a gross deviation from the standard of care that a reasonable person

10

would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

¶20 Based on those statutory definitions, the division concluded that the guilty verdicts on counts 1 and 2, while logically and legally consistent with each other, were logically and legally inconsistent with the guilty verdict on count 3, and that the guilty verdict on count 3, in turn, was logically and legally inconsistent with the guilty verdicts on counts 1 and 2. *Rigsby*, ¶ 14. Rigsby points to *Delgado* in defending the division's rationale. But *Delgado* is inapposite.

¶21 Whereas *Delgado* involved an inconsistency between the element in robbery of taking an item by force and the element in theft of taking an item without force, the alleged inconsistent elements here are the required culpable mental states: intentionally and recklessly (for the second degree assault convictions), on the one hand, and criminal negligence (for the third degree assault conviction), on the other. And the reason this distinction from *Delgado* is meaningful is that section 18-1-503(3) accords special treatment to culpable mental states in Colorado:

> If a statute provides that criminal negligence suffices to establish an element of an offense, that element also is established if a person acts recklessly, knowingly, or intentionally. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally.

11

Thus, section 18-1-503(3) sets up a hierarchical system of culpable mental states in which: (1) with intent is the most culpable, knowingly is the next most culpable, recklessly is the next most culpable, and with criminal negligence is the least culpable; and (2) proving a culpable mental state necessarily establishes any lesser culpable mental state(s). The Venn diagram below highlights these points:



¶22    As this illustration reflects, acting recklessly necessarily includes acting with criminal negligence. Acting knowingly necessarily includes acting recklessly and

acting with criminal negligence. And acting with intent necessarily includes acting knowingly, acting recklessly, and acting with criminal negligence.

¶23 Under section 18-1-503(3), then, by proving that Rigsby acted with intent for purposes of count 1, the People necessarily established that he acted with criminal negligence for purposes of count 3, and by proving that Rigsby acted recklessly for purposes of count 2, the People necessarily established that he acted with criminal negligence for purposes of count 3. It follows that by returning a guilty verdict on count 1 and finding that Rigsby acted with intent, the jury, as a matter of law, necessarily found that he acted with criminal negligence, and by returning a guilty verdict on count 2 and finding that Rigsby acted recklessly, the jury, as a matter of law, necessarily found that he acted with criminal negligence. Hence, even if there is a *logical* inconsistency between acting with intent and acting with criminal negligence, and between acting recklessly and acting with criminal negligence, no *legal* inconsistency exists in either scenario based on section 18-1-503(3). And guilty verdicts that are legally consistent are not mutually exclusive.

¶24 Rigsby recognizes that, pursuant to section 18-1-503(3), proving that a defendant acted intentionally or recklessly suffices to establish that he acted with criminal negligence. He dismisses section 18-1-503(3), though, as simply expressing the legislative prerogative that proving a culpable mental state

13

establishes any lesser culpable mental state(s). But that is precisely why Rigsby cannot prevail: Section 18-1-503(3) reflects the legislature's prerogative, which we must honor. The legislature "has the power to define terms used by it," and it is beyond question that those "statutory definitions control judicial interpretation." *Indus. Comm'n v. Nw. Mut. Life Ins. Co.*, 88 P.2d 560, 563 (Colo. 1939). When the legislature includes particular definitions for terms it uses in a statute, those definitions, not an average person's understanding of the terms, govern. *R.E.N. v. City of Colo. Springs*, 823 P.2d 1359, 1364 (Colo. 1992). Here, the legislature has spoken loud and clear: Proving a culpable mental state necessarily establishes any lesser culpable mental state(s). And we are bound by that declaration.

¶25 Moreover, contrary to Rigsby's assertion, the fact that the jury was not instructed on section 18-1-503(3) is inconsequential. Rigsby cites no authority approving, let alone requiring, a jury instruction based on section 18-1-503(3). Nor does Rigsby explain why the lack of such an instruction renders the statutory provision meaningless. We are not free to disregard section 18-1-503(3) simply because the jury was not informed about it. Had the intent been for section 18-1-503(3) to apply only when the jury is instructed on it, the legislature presumably would have said so. Instead, the legislature simply pronounced that, as a matter of law, a culpable mental state is established by a finding that the defendant acted with a more culpable mental state.

14

¶26 Rigsby insists, though, that he could not have intended to cause injury or been aware of a risk of injury while contemporaneously being unaware of that risk of injury. This assertion misses the mark because it addresses at most whether the second degree assault guilty verdicts, on the one hand, and the third degree assault guilty verdict, on the other, are *logically* inconsistent. Even assuming they are, Rigsby does not, and cannot, show that there is a *legal* inconsistency. Section 18-1-503(3) forecloses such a showing. Therefore, Rigsby cannot establish that the guilty verdicts are mutually exclusive.

¶27 We reiterate that two guilty verdicts are mutually exclusive when the existence of an *element* of one of the crimes negates the existence of an *element* of the other crime. *Delgado*, ¶ 20, 450 P.3d at 707; *Frye*, 898 P.2d at 569 n.13. Because no element of a guilty verdict negates an element of another guilty verdict here, this case does not involve mutually exclusive guilty verdicts.

## B. Multiplicity and Merger

¶28 The People nevertheless submit that the trial court erred by entering multiplicitous convictions instead of merging them and entering a single conviction. We agree.

¶29 The U.S. Constitution shields a person from being "twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V. Similarly, the Colorado Constitution provides that a person shall not "be twice put in jeopardy for the

15

same offense." Colo. Const. art. II, § 18. The protective umbrella of these constitutional provisions prohibits a second trial for the same offense, *Whalen v. United States*, 445 U.S. 684, 688 (1980), and "affords shelter 'against receiving multiple punishments for the same offense,'" *Waddell v. People*, 2020 CO 39, ¶ 11, 462 P.3d 1100, 1105 (quoting *Allman v. People*, 2019 CO 78, ¶ 11, 451 P.3d 826, 829). We deal here only with the protection against improper multiple punishments.

¶30 Double jeopardy tends to be implicated when multiplicity issues exist. *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005). Multiplicity refers to "the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct." *Id.* We have said that the "vice of multiplicity" is that it may yield multiple punishments for the same offense, thereby running afoul of double jeopardy principles. *Id.* Multiple punishments do not merely encompass multiple sentences. In the double jeopardy realm, "[e]ven a conviction unaccompanied by a sentence bears sufficiently adverse collateral consequences to amount to punishment." *People v. Wood*, 2019 CO 7, ¶ 23, 433 P.3d 585, 592.

¶31 The mantle of protection afforded by the Double Jeopardy Clauses does not prevent the legislature from specifying multiple punishments based on the same criminal conduct. *Woellhaf*, 105 P.3d at 214. After all, the power to define criminal offenses and to prescribe the punishments to be imposed upon defendants found guilty of those offenses lies solely with the legislature. *Reyna-Abarca*, ¶ 49, 390 P.3d

16

at 824. Consequently, to determine whether a punishment imposed following a conviction infringes on a defendant's double jeopardy rights, we must first examine the punishment authorized by the legislature for that conviction. *Id.* at ¶ 50, 390 P.3d at 824. If the legislature has not authorized multiple punishments, then the protection against double jeopardy prohibits the imposition of multiple punishments. *Id.* In this regard, the Double Jeopardy Clauses embody "the constitutional principle of separation of powers by ensuring that courts do not exceed their own authority by imposing multiple punishments not authorized by the legislature." *Woellhaf*, 105 P.3d at 214.

¶32  The General Assembly established a single offense of second degree assault that may be committed in alternative ways. § 18-3-203(1), C.R.S. (2019). It did not authorize multiple punishments for second degree assault based on the same criminal conduct. *Id.* Therefore, by entering two second degree assault convictions for the same criminal conduct, the trial court violated Rigsby's right to be free from double jeopardy. *See People v. Denhartog*, 2019 COA 23, ¶ 74, 452 P.3d 148, 160.

¶33  The third degree assault conviction is equally problematic for a different reason. The General Assembly has decreed that when an offense is a lesser included offense of another, the defendant "may not be convicted" of both

17

offenses. § 18-1-408(1), C.R.S. (2019). Simultaneous convictions for a charged offense and a lesser included offense give rise to multiplicity issues. *See id.*

¶34 Here, it is undisputed that third degree assault is a lesser included offense of second degree assault. It is also uncontested that the three offenses in question stemmed from the same criminal conduct. *See People v. Rock*, 2017 CO 84, ¶ 17, 402 P.3d 472, 478 (recognizing that convictions for two separate offenses, where the elements of one constitute a subset of the elements of the other, "can clearly stand if the offenses were committed by distinctly different conduct"). Thus, Rigsby may not stand convicted of both second degree assault and third degree assault.

¶35 The appropriate remedy for Rigsby's multiplicitous convictions is to instruct the trial court to merge all the convictions into a single conviction for second degree assault. *See Halaseh v. People*, 2020 CO 35M, ¶ 10, 463 P.3d 249, 252 (observing that when multiplicitous convictions are involved, we instruct the trial court "to select the combination of offenses that can simultaneously stand that produce the most convictions and the longest sentences, in order to maximize the effect of the jury's verdict"); *Wood*, ¶ 34, 433 P.3d at 594 (clarifying that "when a mittimus provides that two multiplicitous convictions merge . . . , the defendant is afforded the protection to which he is entitled under the double jeopardy clause[s] just the same as when a mittimus indicates that one of two multiplicitous

18

convictions is vacated").  Correspondingly, the trial court should leave only one sentence in place: one of the two concurrent five-year prison sentences.

## IV. Conclusion

¶36    We conclude that the division erred.  The second degree assault guilty verdicts, on the one hand, and the third degree assault guilty verdict, on the other, are not mutually exclusive.  Therefore, we reverse the division's judgment.  Because the convictions are multiplicitous, however, we remand to the court of appeals with instructions to return the case to the trial court to merge the convictions into a single second degree assault conviction and to leave in place only one sentence (one of the two concurrent five-year prison sentences imposed).

JUSTICE GABRIEL dissents.

JUSTICE GABRIEL, dissenting.

¶37 Perceiving this case to involve an issue of multiplicity and merger, and not one of legally and logically inconsistent verdicts, the majority reverses the judgment of the division below. Maj. op. ¶¶ 3–5, 28–36. The majority reaches this conclusion notwithstanding the fact that upholding Derek Rigsby's convictions for second degree assault (intent to cause bodily injury, causing serious bodily injury), second degree assault (reckless conduct), and third degree assault (negligent conduct with a deadly weapon) necessarily means that the jury found that Rigsby was aware of the risk of injury presented by his conduct and unaware of that same risk at the very same time.

¶38 In my view, this case does not present an issue of multiplicity and merger, which implicates double jeopardy concerns. Rather, it presents a question of due process and of a criminal defendant's right to have a jury find beyond a reasonable doubt every element of the crimes charged. Because I believe, contrary to the majority's view, that it is both legally and logically inconsistent for the jury to have found that Rigsby was aware of the risk of injury to the victim and unaware of that same risk at the same time based on the same conduct, I would conclude that reasonable doubt inheres in the jury's verdicts and that Rigsby is therefore entitled to a new trial.

¶39 Accordingly, I respectfully dissent.

1

# I. Factual Background

¶40 The material facts are not disputed. In the course of a bar fight, Rigsby hit the victim in the face with a glass, causing the victim substantial injuries. Based on this single incident, the prosecution charged Rigsby with three separate counts of second degree assault:

- Second degree assault (intent to cause bodily injury, causing serious bodily injury), which required the prosecution to prove that Rigsby, with intent to cause bodily injury to another, caused serious bodily injury to another, § 18-3-203(1)(g), C.R.S. (2019);

- Second degree assault (reckless conduct), which required the prosecution to prove that Rigsby recklessly caused serious bodily injury to the victim by means of a deadly weapon, § 18-3-203(1)(d); and

- Second degree assault (causing bodily injury with a deadly weapon), which required the prosecution to prove that Rigsby, with intent to cause bodily injury to another, caused such injury by means of a deadly weapon, § 18-3-203(1)(b).

¶41 The case proceeded to trial, and at trial, the court instructed the jury on the three above-described counts. In addition, the court instructed the jury on, among other offenses, third degree assault (negligent conduct with a deadly weapon) as a lesser included offense solely of second degree assault (causing bodily injury

2

with a deadly weapon). This lesser included offense required the prosecution to prove, as pertinent here, that Rigsby, with criminal negligence, caused bodily injury to the victim by means of a deadly weapon. § 18-3-204(1)(a), C.R.S. (2019). The court did not instruct the jury on third degree assault (negligent conduct with a deadly weapon) as a lesser included offense of either of the other two second degree assault counts.

¶42 In addition to the foregoing, the trial court instructed the jury on the mental states set forth in the elemental instructions. In particular, the court correctly instructed the jury that (1) a person acts intentionally or with intent "when his conscious objective is to cause the specific result proscribed by the statute defining the offense"; (2) a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists"; and (3) a person acts with criminal negligence "when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." *See* § 18-1-501(3), (5), (8), C.R.S. (2019). In accordance with these instructions, to establish that Rigsby acted intentionally or recklessly, the prosecution had to prove that Rigsby either had a *conscious objective* to cause a specific result or *consciously disregarded* a substantial and unjustifiable risk that the result would occur. To establish that Rigsby acted with criminal negligence, in

contrast, the prosecution had to prove that Rigsby *failed to perceive* a substantial and unjustifiable risk that the result would occur. The jury was not instructed that proof of intent or recklessness was sufficient to establish criminal negligence, nor did the prosecution so argue at trial.

¶43 The jury ultimately convicted Rigsby of second degree assault (intent to cause bodily injury, causing serious bodily injury), second degree assault (reckless conduct), and third degree assault (negligent conduct with a deadly weapon) as a lesser included offense of second degree assault (causing bodily injury with a deadly weapon). The jury did not, however, convict Rigsby of third degree assault (negligent conduct with a deadly weapon) as a lesser included offense of either of the second degree assault counts of conviction.

¶44 Rigsby appealed, arguing, as pertinent here, that his convictions were legally and logically inconsistent because he could not have had a conscious objective to cause bodily injury to the victim, nor could he have consciously disregarded a substantial and unjustifiable risk that his conduct would cause serious bodily injury to the victim, while at the same time failing to perceive the risk of bodily injury to the same victim based on the same act. In other words, Rigsby contended that he could not simultaneously act consciously to cause injury and fail to perceive the risk of the same injury based on the same conduct. The division below agreed and reversed Rigsby's conviction, *People v. Rigsby*, 2018

COA 171, ¶¶ 6–19, __ P.3d __, and we granted the People's petition for a writ of certiorari.

## II. Analysis

¶45 I begin by addressing and rejecting the People's contention, made for the first time before us, that Rigsby forfeited his argument that the verdicts here were legally and logically inconsistent. I then proceed to the merits of Rigsby's contention, and I explain why I respectfully disagree with the majority's analysis and conclusions in this case.

## A. Preservation

¶46 Relying principally on a concurring opinion from a decision of the Maryland Court of Appeals, the People argue that Rigsby did not preserve and therefore forfeited the assertion that he raises in this court. As the majority observes, however, the People expressly *conceded* in the division below that Rigsby preserved this issue. Maj. op. ¶ 13.

¶47 It is unclear to me why the People believe that they can concede preservation of an issue in the court of appeals and then take the opposite position in this court (apparently not recognizing the irony of their asserting a waiver when they themselves arguably waived such an assertion). Needless to say, arguments regarding waivers and forfeitures do not operate solely against criminal defendants; they work both ways. In addition, we have long made clear that the

5

actions of those who represent the state in our courts "must always comport with the sovereign's goal that justice be done in every case and not necessarily that the prosecution 'win.'" *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). In my view, conceding in the court of appeals that a defendant preserved an argument and then arguing in this court that the defendant waived or forfeited that very same argument can be read to suggest too much of a focus on just winning.

¶48 In any event, like the majority, maj. op. ¶¶ 12–13, I believe that Rigsby preserved the issue that he asserts before us, and I next turn to my view of the merits of this case.

## B. Inconsistent Verdicts

¶49 A criminal defendant's constitutional rights to due process of law and a fair trial require the prosecution to prove each element of a charged offense beyond a reasonable doubt. *See People v. Delgado*, 2019 CO 82, ¶ 22, 450 P.3d 703, 707. When, however, a defendant is convicted of two crimes requiring the jury to have found the existence of mutually exclusive elements, the defendant cannot be said to have been convicted of each crime beyond a reasonable doubt. *See id.* at ¶ 23, 450 P.3d at 707. This is because a finding of contradictory elements necessarily expresses a finding of doubt. *Id.*

¶50    Applying this principle in a recent case, we opined that a defendant cannot have been convicted beyond a reasonable doubt of both robbery, which is an unlawful taking of an item with force, and theft, which is an unlawful taking of an item without force, based on the same taking because such a conviction would mean that the jury both convicted and absolved the defendant of taking the item without force. *Id.* at ¶¶ 2–5, 450 P.3d at 704. And "where the existence of an element of one of the [charged] crimes negates the existence of a necessary element of the other [charged] crime . . . [,] the verdicts are legally and logically inconsistent and should not be sustained." *People v. Frye*, 898 P.2d 559, 569 n.13 (Colo. 1995); *accord Delgado*, ¶ 20, 450 P.3d at 707.

¶51    Applying these settled principles here, I believe that Rigsby's convictions for second degree assault (intent to cause bodily injury, causing serious bodily injury) and second degree assault (reckless conduct) are legally and logically inconsistent with his conviction for third degree assault (negligent conduct with a deadly weapon). As noted above, the second degree assault convictions required the jury to find, beyond a reasonable doubt, that Rigsby either *consciously* acted to cause the victim's injury or *consciously* disregarded the risk of such injury. The third degree assault conviction, in contrast, required the jury to find, beyond a reasonable doubt, that Rigsby *failed to perceive* the risk of the same injury based on the same conduct. It is both legally and logically impossible, however, for Rigsby

7

to have acted consciously in such a way as to cause the victim's injury while failing to perceive the risk of the same injury based on the same conduct at the same time.

¶52 In light of the foregoing, I do not believe that these verdicts can be sustained. *See Delgado*, ¶¶ 20–23, 450 P.3d at 707; *Frye*, 898 P.2d at 569 n.13. To do so would deprive Rigsby of his rights to due process and a fair trial. *See Delgado*, ¶¶ 22–23, 450 P.3d at 707. Accordingly, I would affirm the judgment of the division below and remand this case for a new trial. *See id.* at ¶ 45, 450 P.3d at 710 ("The proper remedy for mutually exclusive verdicts is retrial.").

¶53 In reaching this conclusion, I am not persuaded by the majority's view that, by operation of section 18-1-503(3), C.R.S. (2019), even if the verdicts in this case were logically inconsistent, they were not legally inconsistent. Maj. op. ¶¶ 4, 24. Section 18-1-503(3) states, "If a statute provides that criminal negligence suffices to establish an element of an offense, that element also is established if a person acts recklessly, knowingly, or intentionally." In light of this provision, the majority concludes that, by operation of law, proof of intent and recklessness establishes criminal negligence and therefore, even if the verdicts here were logically inconsistent, they were not legally inconsistent. Maj. op. ¶ 23. In so concluding, the majority deems it inconsequential that the jury was not instructed that proof of intent and recklessness establishes criminal negligence. *Id.* at ¶ 25. For several reasons, I disagree.

8

¶54 First, in reaching its conclusion, the majority starts from the premise that an inconsistent verdict analysis turns on the statutory elements. *Id.* at ¶ 18. As noted above, however, an inconsistent verdict analysis is properly premised on the jury's contradictory *findings* as to the elements of the crimes charged because a *finding* of contradictory elements necessarily expresses a finding of reasonable doubt. *See Delgado*, ¶ 23, 450 P.3d at 707.

¶55 Second, although the majority perceives no legal inconsistency in the verdicts at issue, it never explains how a jury can find — either factually or legally — that a defendant both knew of a risk of injury to a victim and did not know of that same risk at the same time and based on the same conduct. Nor, in my view, does anything in section 18-1-503(3) resolve such inconsistent findings, at least absent a jury instruction advising the jury that sufficient proof of intent and recklessness establishes criminal negligence.

¶56 Third, and related to the last point, although the majority deems it inconsequential that the jury was not instructed that proof of intent and recklessness establishes criminal negligence, maj. op. ¶ 25, I believe that such an instruction would have allowed us to resolve the facial inconsistency in the jury's verdicts. Specifically, had the jury been instructed that proof of intent or recklessness establishes criminal negligence, then we would have an explanation for the jury's otherwise inconsistent verdicts. Absent such an instruction,

9

however, we are left with findings that Rigsby simultaneously knew of the risk of injury to the victim arising from his conduct and did not know of that same risk, and nothing in the record allows us to determine, absent speculation, which of the charges the jury found to be supported by the evidence. Because such contradictory findings necessitate a conclusion of reasonable doubt, I believe that a new trial is required. *See Delgado*, ¶ 23, 450 P.3d at 707.

¶57 I am likewise unpersuaded by the People's somewhat different, albeit related, assertion that the verdicts here are not legally inconsistent because, by operation of section 18-1-503(3), third degree assault is a lesser included offense of second degree assault.

¶58 As a general matter, "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶ 64, 390 P.3d 816, 826. Thus, in the typical lesser included offense scenario, proof of the greater offense necessarily establishes all of the elements of the lesser offense, and convictions on both the greater and lesser offenses would not be legally and logically inconsistent.

¶59 Here, the People argue that third degree assault (negligent conduct with a deadly weapon) is a lesser included offense of both second degree assault (intent

to cause bodily injury, causing serious bodily injury) and second degree assault (reckless conduct) because, under section 18-1-503(3), proof of intent and recklessness establishes criminal negligence. Even assuming that the People are correct in this regard, however, for several reasons, I do not believe that their analysis solves the problem of the mutually inconsistent verdicts in this case.

¶60 First, as noted above, the jury was not instructed that third degree assault (negligent conduct with a deadly weapon) is a lesser included offense of either second degree assault (intent to cause bodily injury, causing serious bodily injury) or second degree assault (reckless conduct). Nor did the jury so find. Accordingly, the fact that the third degree assault charge might, by operation of section 18-1-503(3), be deemed to be a lesser included offense of the two second degree assault charges on which Rigsby was convicted does not resolve the legal and logical inconsistency in what the jury actually found in this case.

¶61 Second, applying section 18-1-503(3) here does not change the fact that Rigsby could not have perceived and intended to cause the victim's injury and, at the same time, failed to perceive the risk of the same injury based on the same conduct. As the Texas Court of Criminal Appeals stated, citing Texas's analogue to section 18-1-503(3) in a substantially similar context, a guilty verdict on what is deemed to be a greater offense under the statute only "artificially 'includes'" a verdict on the lesser offense. *Saunders v. State*, 913 S.W.2d 564, 572 (Tex. Crim.

App. 1995). It does not, however, resolve the conflict in mutually inconsistent verdicts. *See id.* at 572–73.

¶62 In this regard, the Connecticut Supreme Court's decision in *State v. Chyung*, 157 A.3d 628, 642–43, (Conn. 2017), is instructive. In *Chyung*, the jury convicted the defendant of both murder and first degree manslaughter with a firearm. *Id.* at 632. The defendant moved for a judgment of acquittal and a new trial, arguing that the verdicts were legally inconsistent because to convict him of murder, the jury had to find that he had the specific intent to kill the victim, whereas, to convict him of first degree manslaughter, the jury had to find that he had acted recklessly, and those mental states are inconsistent. *Id.* The trial court denied the defendant's motion, concluding that double jeopardy principles required that the manslaughter conviction be vacated because it was a lesser included offense of the murder conviction. *Id.* The Connecticut Supreme Court reversed, however, concluding that because the verdicts were legally inconsistent and because neither the supreme court nor the trial court could know which charge the jury found to be supported by the evidence, neither verdict could stand and a new trial was required. *Id.* at 632–33.

¶63 In so concluding, the court noted, as pertinent here, that although its prior case law had made clear that first degree manslaughter is a lesser included offense of murder, the case law also made clear that in reaching this determination, the

12

court was applying an exception to the ordinary rule that, for a crime to be a lesser included offense, proof of the elements of the greater offense must necessarily establish all of the elements of the lesser offense. *See id.* at 642–43. Because, however, proof of murder did not necessarily establish all of the elements of first degree manslaughter (because first degree manslaughter required a different mental state from murder), the fact that first degree manslaughter is a lesser included offense of murder did not resolve the inconsistency in the jury's verdicts, and both verdicts had to be vacated. *Id.* at 643.

¶64 In my view, the same principle applies in this case. It may well be that, by operation of section 18-1-503(3), third degree assault (negligent conduct with a deadly weapon) might be deemed a lesser included offense of second degree assault (intent to cause bodily injury, causing serious bodily injury) and second degree assault (reckless conduct). But this does not resolve the inconsistency between the jury's findings that, on the one hand, Rigsby perceived and intended to cause the victim's injury and, on the other hand, he failed to perceive the risk of the same injury based on precisely the same conduct at precisely the same time. Nor can we know which of the charges the jury found to be supported by the evidence. *Chyung*, 157 A.3d at 632.

¶65 Finally, I note that the majority rests its conclusion on principles of multiplicity and merger, *see* maj. op. ¶¶ 3–5, 28–35, which principles are grounded

in the Double Jeopardy Clause of the Constitution, *see, e.g.*, *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005). This case, however, does not involve a matter of double jeopardy. Rather, it involves a matter of Rigsby's rights to due process of law under the Fifth and Fourteenth Amendments, to a fair trial under the Sixth Amendment, and to have the jury find beyond a reasonable doubt all elements of the crimes charged before convicting him. *See Delgado*, ¶ 22, 450 P.3d at 707. Because the majority's analysis does not explain how the inconsistent verdicts in this case can stand in light of what I believe to be the applicable constitutional principles, I respectfully disagree with the majority's decision to uphold those inconsistent verdicts.

### III. Conclusion

¶66 Rigsby's convictions in this case required the jury to find that Rigsby consciously perceived the risk of, or consciously intended to cause, the victim's injury while at the same time, and based on the very same conduct, he failed to perceive the risk of that same injury. Unlike the majority, I believe that the impossibility of Rigsby's simultaneously having such conflicting mental states rendered the jury's verdicts both legally and logically inconsistent. Accordingly, like the division below, I believe that settled law requires that we vacate those verdicts and remand this case for a new trial.

¶67 For these reasons, I respectfully dissent.