******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., concurring. I agree with the majority that the verdicts were legally inconsistent and must be vacated. With regard to the issue likely to arise on remand, however, I disagree with the majority that the trial court properly permitted the state to present evidence of prior uncharged misconduct of the defendant, Chihan Eric Chyung. In my view, the fourteen year gap between the misconduct and the killing in the present case, and the substantive dissimilarities of the misconduct to the killing would render it an abuse of discretion to admit such evidence to prove intent to kill and the absence of mistake.

At the outset, I note my agreement with the majority that, technically, no evidence of prior misconduct was presented to the jury. See footnote 24 of the majority opinion. The state did not present any testimony from Pamela Febles, the defendant's former girlfriend, or her statement to the police, regarding the incident of misconduct. Rather, the state inquired about the incident during its cross-examination of the defendant, and the defendant replied that he had no recollection of any such incident occurring. It is well settled that counsel's questions to a witness are not evidence. See Connecticut Criminal Jury Instructions (4th Ed. 2008) § 1.2-6, available at http://www.jud.ct.gov/ji/Criminal/Criminal/pdf. (last visited March 22, 2017); *State* v. *Martinez*, 95 Conn. App. 162, 182, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006); *State* v. *Ciccio*, 77 Conn. App. 368, 379–80, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003). Nonetheless, without objection, the trial court gave the jury a limiting instruction as to the permissible use of prior misconduct evidence, thus effectively misinforming the jury that it could rely on the state's question as substantive evidence.[1] I agree with the majority that, under these unusual circumstances, we should consider whether it would be an abuse of discretion to admit such prior misconduct evidence under § 4-5 (c) of the Connecticut Code of Evidence. Conn. Code Evid. (2012) § 4-5 (c), available at http://jud.ct.gov/Publications/Code2000.pdf.

I would conclude that the evidence should not be admitted for the following reasons. Most courts have recognized that "[t]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." (Internal quotation marks omitted.) *United States* v. *Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988); accord *United States* v. *Franklin*, 250 F.3d 653, 659 (8th Cir.), cert. denied, 534 U.S. 1009, 122 S. Ct. 495, 151 L. Ed. 2d 406 (2001); *United States* v. *Fields*, 871 F.2d 188, 197–98 (1st Cir.), cert. denied, 493 U.S. 955, 110 S. Ct. 369, 107 L. Ed. 2d 355 (1989). "Of course, if the acts

admitted [as prior misconduct] are too remote in time, this substantially weakens their probative value and weighs in favor of exclusion. This is especially true in cases in which the evidence is probative of intent. See *United States* v. *Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982) ('[T]o the extent such prior acts are relevant to the matter of knowledge, rather than being relevant only to intent, remoteness may be less of a factor in determining the probative value of the evidence. The passage of time and changing circumstances are more likely to significantly change one's intent than they are to obliterate knowledge once gained.')." *United States* v. *Fields*, supra, 198; see also *United States* v. *Strong*, 415 F.3d 902, 905 (8th Cir. 2005) ("the answer to how long is too long depends on the theory that makes the evidence admissible"), cert. denied, 546 U.S. 1130, 126 S. Ct. 1121, 163 L. Ed. 2d 927 (2006).

"Remoteness must be looked at in light of the similarity between the charged and the extrinsic offense." *United States* v. *Terebecki*, 692 F.2d 1345, 1349 (11th Cir. 1982); *State* v. *Scott*, 405 S.C. 489, 506, 748 S.E.2d 236 (App. 2013) (prior misconduct analysis "must reconsider the similarities and dissimilarities in determining total probative value, including a reduction in probative value predicated upon remoteness"). Thus, "the more striking the similarities between the facts of the crime charged and the facts of the prior bad act, the longer evidence of the prior bad act remains relevant and potentially admissible for certain purposes." *State* v. *Gray*, 210 N.C. App. 493, 507, 709 S.E.2d 477 (2011), review denied, 723 S.E.2d 540 (N.C. 2012).

In the present case, the state sought to use prior misconduct that occurred fourteen years before the defendant killed his wife to prove that the discharge of the gun was not accidental, as the defendant claimed, and that he intended to kill her. This time period should raise serious questions as to the admissibility of the evidence. See *State* v. *Snelgrove*, 288 Conn. 742, 761–62, 954 A.2d 165 (2008) ("[O]rdinarily, a gap of fourteen years would raise serious questions as to whether the prior misconduct was too remote in time. The defendant was incarcerated for eleven of those years, however . . . ."). The majority concludes that the act of producing a gun during an argument with a domestic partner is sufficiently aberrant and similar to render the fourteen year period irrelevant. In my view, there are at least two material dissimilarities that, when viewed in conjunction with the fourteen year period, sufficiently reduce the probative value of that evidence as to the issue of an accidental discharge to warrant its exclusion. First, the defendant never discharged his gun in his argument with Febles. Although the defendant's action toward Febles rightly should be viewed as an implicit threat, the defendant never followed through, or attempted to follow through, with action then or thereafter.[2] Thus, its relevance to his intent to shoot his wife is tenuous. Cf. *State* v. *Beavers*, 290 Conn. 386, 399–408,

963 A.2d 956 (2009) (uncharged misconduct of both prior arson and threat to commit arson properly admitted to establish intent and absence of mistake in arson murder case approximately five years later where defendant claimed cigarettes accidentally started fire). Second, the threat was directed at a different victim.[3]

Several courts have recognized that one or both of these factors will preclude admission of the prior misconduct evidence. See, e.g., *Robertson* v. *State*, 829 So. 2d 901, 909–11 (Fla. 2002) ("In this case, the crime with which [the defendant] was charged was the completed offense of murder against his girlfriend utilizing a handgun. The prior offense, assuming it occurred, involved a threat of violence against [the defendant's] former wife, involving an assault rifle. Neither the crimes, the weapons, nor the victims are similar. . . . The defendant in this case was charged with the *completed*, violent offense of second degree murder. The prior, alleged misconduct was an offense that *threatened* violence. Although such a prior threat against the victim in this case, if not too remote, may have been admissible to show intent and the absence of mistake or accident, the same cannot be said of a threat against another." [Emphasis in original; footnotes omitted.]);[4] *Johnson* v. *State*, 655 N.E.2d 502, 504–505 (Ind. 1995) (The court stated with regard to evidence that the defendant pointed a gun at persons other than the victim and threatened to shoot if they entered his apartment: "We do not see how evidence of an incident in which the defendant confronted people other than and unrelated to the victim in this case and in which a shooting did not occur makes it more likely either that [the defendant] knew that he was killing the victim or that the shooting was not an accident."); *Driver* v. *Commonwealth*, 361 S.W.3d 877, 885–86 (Ky. 2012) (The court explained its conclusion that it was error to admit evidence of prior misconduct that occurred twelve years before the criminal conduct at issue: "Because prior acts of violence or threats of violence against persons other than the victim in the case on trial have significantly less probative value than similar prior acts and threats against the same victim, as a general rule specific threats directed against third parties are inadmissible. . . . [A] threat to kill or injure someone [that] is specifically directed at some individual other than the deceased is inadmissible, as it shows only a special malice resulting from a transaction with which the deceased had no connection. . . . An exception has been recognized when the threat against the third person is so close in time to the charged offense as to be considered a part of the same transaction." [Citations omitted; internal quotation marks omitted.]); *Walker* v. *State*, 116 Nev. 442, 446–47, 997 P.2d 803 (2000) (The court concluded that two prior incidents in which the defendant pointed a gun at the victim, six and ten years before the defendant murdered the victim, were clearly remote in time and less relevant to the defendant's intent to kill because the prior acts did not involve "the firing or attempted firing of the

weapon at [the victim]. . . . Therefore, because the prior bad acts offered here do not clearly establish an intent to kill, but more accurately show an intent to threaten, the logical relevance of the acts to show [the defendant's] later intent is further diminished." [Citation omitted.]); see also *Hoes* v. *State*, 35 Md. App. 61, 69–70, 368 A.2d 1080 ("The relevance of the prior conduct rests upon two things: the similarity of the method of assault and the fact that it was upon the same victim. That he had shot her before in like manner is inferentially relevant to his intent to do so this time, especially in light of his admission that he had discharged the firearm. As the [s]tate pointed out, the fact that [the] appellant had shot [the victim] a few years earlier makes it less likely that shooting her this time was an accident or mistake. *Had the prior assault been directed toward another victim, it would have had little or no relevance in evaluating his intent* [*toward the victim*]. . . . *The similarity of nature and victim creates the relevant interrelationship*." [Emphasis added; footnote omitted.]), cert. denied, 280 Md. 731 (1977).[5]

Although I would not go so far as to assert that prior threats of violence against a different victim could never be admissible as prior misconduct evidence, those facts in conjunction with the fourteen year intervening period in the present case make it apparent that the prejudice of the prior misconduct evidence far outweighs its relevance.

I therefore respectfully concur in the judgment.

[1] The trial court instructed the jury that it could not consider as evidence the arguments and statements of counsel in connection with addressing counsels' closing arguments. The court did not instruct the jury that counsels' questions to witnesses are not evidence.

[2] In fact, Febles' statement indicates that after the defendant pressed the gun to her head, he became distraught and handed the weapon over to her. Following this incident, Febles continued to cohabit with the defendant for a few more weeks without any report of him subsequently drawing a weapon.

[3] Another dissimilarity, less material, is the circumstance surrounding each confrontation. Febles indicated that the defendant was jealous and that the fight erupted when she returned later than expected from a party. According to the defendant, his wife was angry at him for telling her that she had paid too much for new tires.

[4] In *Robertson* v. *State*, supra, 829 So. 2d 910 nn.8 and 9, the court contrasted cases admitting evidence of prior misconduct against the same victim as the one in the charged offense and those cases in which the charged offenses and the prior offenses involved similar *completed* crimes of violence.

[5] We have rejected an argument that charged and uncharged crimes must be "remarkably similar" in order to be relevant. See *State* v. *Kalil*, 314 Conn. 529, 543–44, 107 A.3d 343 (2014). We note, however, that, in *Kalil*, a case in which the issue was intent with regard to charges of burglary, the uncharged misconduct occurred hours later at another home. Id., 545.