******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The defendant was convicted of two counts of assault in the first degree
in connection with his conduct in cutting the victim's throat with a razor
blade. At the time of the incident, the defendant and the victim were
engaged in an argument at a fast-food restaurant, where they both were
employed. The defendant was subsequently charged with both inten-
tional assault and reckless assault. At trial, after the close of the state's
case, the defendant moved for a judgment of acquittal, arguing that
the charges were legally inconsistent because each charge required a
mutually exclusive mental state. The trial court denied the motion.
Subsequently, the jury found the defendant guilty of both of the charged
crimes. The defendant then filed another motion for a judgment of
acquittal, as well as a motion for a new trial, asserting that the jury's
verdict was legally inconsistent. The trial court denied both motions
and rendered a judgment of conviction on both counts. The defendant
appealed to the Appellate Court, which affirmed the trial court's judg-
ment, and the defendant, on the granting of certification, appealed to
this court. *Held* that, contrary to the defendant's claim, the jury's verdict
of guilty of intentional assault and reckless assault was not legally
inconsistent: the jury reasonably could have found that the defendant
had intended to cause the victim serious physical injury and simultane-
ously disregarded the risk that his conduct would cause the victim's
death, and this court had previously held that convictions involving both
intentional and reckless mental states may be legally consistent when
each mental state pertains to a different result; moreover, this court
rejected the defendant's claim that two different injuries are required
for a defendant to be convicted of two different offenses requiring proof
of mutually exclusive mental states, as the relevant inquiry is whether
the opposing mental states related to the same result, not whether both
convictions related to the same injury, and as such convictions are
legally inconsistent only if they require that the defendant possess oppos-
ing mental states with respect to the same objective; furthermore, there
was no merit to the defendant's claim that the state could not maintain
on appeal that his convictions of intentional and reckless assault were
consistent on the ground that the state's theory at trial contemplated
those charges as alternatives, as there was no suggestion that the state
had changed its factual theory of the case on appeal, and, even if the
state had presented the charges as alternatives at trial, that would have
been the state's legal theory of the case, convictions of intentional and
reckless assault are not necessarily legally inconsistent, and the trial
court properly instructed the jury on that point.

Argued November 23, 2020—officially released June 23, 2021*

*Procedural History*

Two part substitute information charging the defen-
dant, in the first part, with two counts of the crime of
assault in the first degree, and, in the second part, with
being a persistent dangerous felony offender, brought
to the Superior Court in the judicial district of Windham,
geographical area number eleven, where the first part
of the information was tried to the jury before *Seeley,
J.*; verdict of guilty; thereafter, the defendant was pre-
sented to the court on a plea of nolo contendere to the
second part of the information; judgment of guilty in
accordance with the verdict and plea; subsequently, the
court denied the defendant's motions for a judgment

of acquittal and for a new trial, and the defendant appealed to the Appellate Court, *Prescott*, *Bright* and *Eveleigh*, *Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Jonathan R. Formichella*, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Anne F. Mahoney*, state's attorney, and *Mark A. Stabile*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. In *State* v. *Nash*, 316 Conn. 651, 666, 114 A.3d 128 (2015), we held that convictions of intentional assault in the first degree and reckless assault in the first degree[1] may be legally consistent when each mutually exclusive mental state pertains to a different result. Thereafter, in *State* v. *King*, 321 Conn. 135, 145, 136 A.3d 1210 (2016) (*King 2016*), we applied this rationale to again conclude that convictions of intentional and reckless assault were legally consistent. This certified appeal requires us to determine whether this precedent governs the outcome of the present case. We conclude that it does.

The defendant, Victor M. Alicea, was convicted of one count of intentional assault and one count of reckless assault. On appeal, he contends that his convictions of intentional and reckless assault are legally inconsistent, notwithstanding *Nash* and *King 2016*, because the requisite mental states are mutually exclusive under the particular circumstances of his case, which involved only one act, one victim, and one injury. The defendant claims that his case is instead governed by *State* v. *King*, 216 Conn. 585, 592–94, 583 A.2d 896 (1990) (*King 1990*), and *State* v. *Chyung*, 325 Conn. 236, 247–48, 157 A.3d 628 (2017). Accordingly, we must survey our jurisprudence regarding the legal consistency of multiple verdicts to resolve seemingly disparate language from our cases and to identify a uniform rule. In addition, this appeal requires us to examine the different circumstances under which a claim of legally inconsistent verdicts implicates our "theory of the case" doctrine. We address these issues in turn.

The Appellate Court's decision sets forth the facts and procedural history; *State* v. *Alicea*, 191 Conn. App. 421, 424–26, 436–37, 215 A.3d 184 (2019); which we summarize in relevant part. The defendant and the victim, Tyrone Holmes, were employees at a Burger King restaurant. In July, 2015, the defendant was working an overnight shift when Holmes, who was not working that night, arrived and entered through the back door of the restaurant. Holmes intended to drop off supplies and "to speak with the defendant, who, he had heard, had been talking about him." Id., 424. At Holmes' request, the defendant stepped outside for a "brief discussion" with Holmes, during which the defendant "denied having talked negatively about Holmes." Id., 424–25. During the conversation, "[e]verything appeared fine to Holmes." Id., 425.

After both men went back inside the restaurant, Holmes overheard the defendant speaking on his cell phone, saying that "the defendant had a problem." Id. "Holmes told the defendant that they did not have a problem, and the defendant walked away . . . ." Id. Holmes followed, at which point they began arguing.

"The defendant then pulled Holmes' head toward him and cut his throat with a razor blade." Id. Holmes initially assumed a fighting stance, thinking the defendant had punched him. After noticing that he was bleeding, however, Holmes left the restaurant. Holmes was subsequently taken to a local hospital, where an emergency medicine physician determined that he had "sustained a neck laceration that was approximately seven inches long . . . ." Id. Given the severity of his injury, Holmes was then transferred to another hospital, where he underwent surgery to repair his lacerated neck muscle and left external jugular vein.

The defendant was arrested and charged with both intentional assault and reckless assault. At trial, after the close of the state's case, the defendant moved for a judgment of acquittal. He argued, in part, that the charges were legally inconsistent because each charge required a mutually exclusive mental state. The trial court denied the motion, explaining that this court had held, in *State* v. *Nash*, supra, 316 Conn. 651, that intentional and reckless assault charges are legally consistent. See id., 666–69. Subsequently, the jury found the defendant guilty of both charges. The defendant filed a renewed motion for a judgment of acquittal and a motion for a new trial, asserting that the verdicts were legally inconsistent. The trial court denied both motions and rendered a judgment of conviction on both counts. The court then merged the convictions and sentenced the defendant to an enhanced mandatory minimum term of ten years incarceration, followed by twelve years of special parole on the count of intentional assault as a persistent dangerous felony offender.[2]

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, among other things, that the trial court incorrectly had concluded that the verdicts were legally consistent. The Appellate Court subsequently affirmed the judgment of the trial court. *State* v. *Alicea*, supra, 191 Conn. App. 450. Relevant to this appeal, the Appellate Court concluded that the verdicts of guilty for both intentional assault and reckless assault were legally consistent. Id., 434. Relying on *State* v. *Nash*, supra, 316 Conn. 666–69, the court reasoned that, in order to find the defendant guilty of reckless assault, "the jury was required to find that the defendant engaged in conduct that . . . created a grave risk of death to Holmes, ultimately resulting in Holmes' serious physical injury. Such a conclusion is not inconsistent with the [jury's] finding that the defendant also intended to seriously injure Holmes," as it was required to find in order to find the defendant guilty of intentional assault. (Emphasis omitted.) *State* v. *Alicea*, supra, 434.

Thereafter, the defendant filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court correctly conclude

that the jury's verdicts of guilty of intentional assault and reckless assault were not legally inconsistent?" *State* v. *Alicea*, 333 Conn. 937, 219 A.3d 373 (2019).

On appeal, the defendant contends that the verdicts finding him guilty of intentional assault and reckless assault are legally inconsistent because their requisite mental states—intentional and reckless—are mutually exclusive. Specifically, he argues that the verdicts are inconsistent in this case because it was impossible for the jury to find both mutually exclusive mental states with respect to only one act, one victim, and one injury. In addition, he asserts that his legal inconsistency claim must be viewed in light of the state's theory of the case as presented to the jury at trial—namely, that the charges were brought in the alternative. The state contends that the Appellate Court correctly concluded that the convictions are consistent because each mental state pertains to a different *result*—in other words, the statutory objectives of each mental state are different. The state also asserts that we should not review the defendant's claim about the state's theory of the case because it is outside the scope of the certified question. In the alternative, the state strongly disputes the defendant's characterization of its theory of the case at trial.

The following legal principles guide our analysis of this claim. "A claim of legally inconsistent convictions, also referred to as mutually exclusive convictions, arises when a conviction of one offense requires a finding that negates an essential element of another offense of which the defendant also has been convicted. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted. If that is the case, the [convictions] are legally inconsistent and cannot withstand challenge. . . . Whether two convictions are mutually exclusive presents a question of law, over which our review is plenary." (Internal quotation marks omitted.) *State* v. *Chyung*, supra, 325 Conn. 245–46. "When a jury has returned legally inconsistent verdicts, there is no way for the reviewing court to know which charge the jury found to be supported by the evidence. . . . Accordingly, the court must vacate both convictions and remand the case to the trial court for a new trial." (Citation omitted; footnote omitted.) Id., 247.

In this case, the defendant was convicted of one count each of intentional assault in violation of General Statutes § 53a-59 (a) (1) and reckless assault in violation of § 53a-59 (a) (3). Section 53a-59 (a) (1) provides that an individual commits intentional assault when, "[w]ith *intent to cause serious physical injury* to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ." (Emphasis added.) Section 53a-59 (a) (3) pro-

vides that an individual commits reckless assault when, "under circumstances evincing an extreme indifference to human life he *recklessly engages in conduct which creates a risk of death* to another person, and thereby causes serious physical injury to another person . . . ." (Emphasis added.)

We have previously recognized that "the statutory definitions of 'intentionally' and 'recklessly' are mutually exclusive and inconsistent." *State* v. *King*, supra, 216 Conn. 593–94. Intentional conduct requires the defendant to possess a "*conscious objective . . . to cause*" the result described in the statute defining the offense. (Emphasis added.) General Statutes § 53a-3 (11). By contrast, reckless conduct requires that the defendant "is aware of and *consciously disregards* a substantial and unjustifiable risk" that the result described in the statute will occur. (Emphasis added.) General Statutes § 53a-3 (13). Thus, a reckless mental state is inconsistent with an intentional mental state because "one who acts recklessly does not have a conscious objective to cause a particular result." (Internal quotation marks omitted.) *State* v. *King*, supra, 594.

We have held, however, that convictions involving both intentional and reckless mental states are legally consistent in certain circumstances. For example, when each mental state pertains to a different act, a different victim, or a different injury, then the convictions are consistent. See, e.g., *State* v. *King*, supra, 321 Conn. 144 (convictions for intentional and reckless assault are legally consistent when "the jury reasonably could have found that the defendant's conduct amounted to two separate acts"); *State* v. *Hinton*, 227 Conn. 301, 315, 630 A.2d 593 (1993) (convictions for intentional and reckless assault are legally consistent when defendant intended to injure one person and recklessly disregarded risk to bystanders because "here we have two different victims and therefore two different results"). Significantly, we have also explained that convictions involving both intentional and reckless mental states may be legally consistent when each mental state pertains to a different *result. State* v. *Nash*, supra, 316 Conn. 666 ("there is no reason why a person cannot simultaneously act intentionally and recklessly with respect to the same conduct and the same victim if each of those two mental states pertains to a different result" (emphasis omitted)). "[M]ental states . . . exist only with reference to particular results . . . . Thus, it is necessary to examine the mental state element as it arises in [the] particular statute defining [the] offense to determine whether actual inconsistency exists." (Internal quotation marks omitted.) Id., 668.

We find our decisions in *Nash* and *King 2016* to be particularly instructive in this case. In *Nash*, the defendant was convicted of, among other crimes, both intentional and reckless assault under § 53a-59 (a) (1) and

(3) after he fired several shots into a home, one of which injured the homeowner's sister. Id., 654. We held that the defendant's convictions were not legally inconsistent. Id., 666–69. We reasoned that "the two mental states required to commit the offenses relate to different results" because, "in order to find the defendant guilty of those offenses, the jury was required to find that the defendant intended to injure another person and that, in doing so, he recklessly created a risk of that person's death." Id., 666. We concluded that "the jury reasonably could have found that the defendant simultaneously possessed both mental states . . . ." Id., 667–68. We applied *Nash* to uphold convictions of intentional and reckless assault again in *King 2016*. In that case, the defendant brandished his knife before stabbing the victim several times. *State* v. *King*, supra, 321 Conn. 138–39. We held that the convictions were not legally inconsistent because, under *Nash*, "the jury reasonably could have found that when the defendant stabbed the victim, he intended to cause serious injury to her and that he also recklessly engaged in conduct [that created] a risk of the victim's death. . . . That is, the defendant's act of stabbing the victim is consistent with two different mental states, each related to two different results." (Citation omitted; internal quotation marks omitted.) Id., 145.

In the present case, *Nash* squarely governs our examination of the mental state elements of intentional and reckless assault and demonstrates that the convictions are not legally inconsistent. In order to find the defendant guilty of both charges, the jury was required to find—with respect only to the mental state element of each charge—that the defendant (1) consciously intended to cause Holmes serious physical injury, and (2) consciously disregarded the risk that his conduct would result in Holmes' death. The jury reasonably could have found that the defendant simultaneously possessed both mental states pertaining to his singular action of cutting Holmes' throat. In other words, the jury reasonably could have found that the defendant intended to cause Holmes serious physical injury and simultaneously disregarded the risk that his conduct would cause Holmes' death. Therefore, the convictions are not legally inconsistent.

The defendant nonetheless contends that his convictions are legally inconsistent for two reasons. First, he asserts that we stated in *King 1990* and *Chyung* that the mutually exclusive mental states must pertain to distinct acts or injuries. He argues that these cases can be read consistently with *Nash* and *King 2016* by examining the respective facts of each case. He further contends that the facts of this case are more analogous to *King 1990* and *Chyung* because each of these three cases involved only one act and one injury, whereas *Nash* and *King 2016* involved multiple acts and multiple potential injuries. Second, the defendant argues that

the state is bound by the theory of the case it presented at trial, namely, that the charges were alternatives. Specifically, he contends that the state cannot now argue that the convictions are legally consistent because it did not present the charges to the jury as consistent. We address each argument in turn.

First, the defendant asserts that our case law establishes that "two different injuries are required in order for a defendant to be convicted of two different offenses requiring proof of mutually exclusive mental states." (Emphasis omitted.) For this proposition, he relies on *King 1990* and *Chyung*. In *King 1990*, the defendant was convicted of, among other things, attempted murder and reckless assault for lighting a fellow prisoner's cell on fire and rigging the door to trap him inside. *State* v. *King*, supra, 216 Conn. 586–88. In *Chyung*, the defendant was convicted of murder and manslaughter in the first degree with a firearm for placing a gun into a bag, when it suddenly discharged, killing the victim. *State* v. *Chyung*, supra, 325 Conn. 241. In both cases, this court concluded that the convictions were legally inconsistent because, "[t]o return verdicts of guilty for both [charges] . . . the jury would have had to find that the defendant simultaneously acted intentionally and recklessly with regard to the same act and the same result, *i.e.*, *the injury to the victim*." (Emphasis added.) *State* v. *King*, supra, 593; accord *State* v. *Chyung*, supra, 246–48. Specifically, in *King 1990*, we reasoned that the defendant could not have both consciously intended to cause the victim's death, as required by the attempted murder conviction, while also recklessly disregarding the risk of the victim's death, as required by the reckless assault conviction. *State* v. *King*, supra, 593–94; see also *State* v. *Chyung*, supra, 247–48.

In the present case, the defendant contends that our holdings in *King 1990* and *Chyung* establish that mutually exclusive mental states are legally consistent only if they pertain to different acts or injuries because these cases define "result" as "injury to the victim." (Emphasis omitted; internal quotation marks omitted.) In addition, the defendant argues that comparing the facts of these cases with the facts of *Nash* and *King 2016* further delineates this rule. Specifically, *King 1990* and *Chyung* each involved only one act—respectively, the single act of trapping the victim in the locked prison cell and the single discharge from the gun—and one injury, and, therefore, the convictions were inconsistent. By contrast, *Nash* and *King 2016* each involved multiple acts or multiple injuries—respectively, multiple shots fired and multiple stab wounds inflicted—and, therefore, the convictions were consistent. The defendant asserts that his legal inconsistency claim hinges on this factual distinction because, "[w]hen there are multiple blows, multiple stabs, multiple shots fired, or more than one victim, it is at least possible for a jury to find a defendant guilty of two conflicting [mental

state] crimes, and the verdicts will not be held to be legally inconsistent." The defendant further asserts that the present case is more analogous to *King 1990* and *Chyung* because he engaged in a single act to inflict a single laceration. Therefore, he contends, the mutually exclusive mental states pertain to a single "result" and are legally inconsistent.

We are not persuaded by the defendant's interpretation of our case law. In *Nash*, we rejected the same argument the defendant raises here, reasoning that "[t]he relevant inquiry . . . is whether the opposing mental states relate to the same result, not whether both convictions relate to the same injury." *State* v. *Nash*, supra, 316 Conn. 668. The word "result" in this context referred to the result *of the requisite mental state*, or, in other words, the statutory objective associated with the respective mental state. See id., 669 and n.18. This is "separate and distinct" from the injury-in-fact element required for each conviction. Id., 669. Moreover, we explained that "[n]othing that we said in [*King 1990*] . . . should be read to mean that . . . the relevant inquiry is whether the statutes at issue require findings that the defendant caused the same injury to the victim. Rather . . . [the convictions] are legally inconsistent only if they require that the defendant possess the opposing mental states with respect to the same *objective* . . . ." (Emphasis added.) Id., 669 n.18. Therefore, in *Nash*, we considered and expressly rejected the same argument the defendant raises here.[3]

Additionally, the defendant overestimates the degree to which the rationales of all four cases turned on the facts of each case rather than the statutory elements of the respective charges. The defendant relies on language from *King 1990* and *Chyung* that the mental states must pertain to different *injuries*; however, the outcomes of all four cases actually hinged on the *objective* associated with each statutory, mental state element, not the acts performed by the defendants or the injuries suffered by the victims. *Nash* expressly articulated this rule, but all four cases have employed it. For example, in *King 2016*, we noted that "the jury reasonably could have found that the defendant's conduct amounted to two separate acts"; *State* v. *King*, supra, 321 Conn. 144; but we also applied *Nash* to conclude that the verdicts would be consistent even under the theory that the defendant's conduct amounted to only one act.[4] Id., 144–45.

Finally, the defendant claims that the state has impermissibly changed its theory of the case on appeal. The following additional procedural history is relevant to the defendant's argument. During trial, following the state's presentation of its case-in-chief, the defendant orally moved for a judgment of acquittal on the ground that the charges were legally inconsistent. *State* v. *Alicea*, supra, 191 Conn. App. 436. At oral argument on

the motion, the prosecutor indicated that he intended to argue to the jurors that, "if they find [the defendant] not guilty [of intentional assault], that they should proceed to determine whether he's reckless . . . ." The trial court, however, concluded that the charges were legally consistent under *Nash*, and it denied the defendant's motion. Subsequently, during closing argument, the prosecutor explained to the jury that, "if you do not agree [that the state has proven intentional assault], you don't believe the evidence supports that, I submit to you that the evidence and the record show, at the very least, that [the defendant] acted recklessly." Consistent with its ruling on the defendant's motion, the trial court instructed the jury to consider each charge separately.

The defendant contends that the state argued to the jury that the charges of intentional and reckless assault were *alternatives*, meaning that the jury could not find the defendant guilty of both counts. The defendant also contends that the state argued "for the first time" in its opposition to the defendant's postverdict, renewed motion for a judgment of acquittal and to his motion for a new trial that the verdicts were legally consistent under
*Nash*. On appeal, the defendant argues that the state cannot change its theory of the case postverdict to avoid the verdicts' legal inconsistency. The state asserts that this issue is distinct from the legal consistency issue and, therefore, unreviewable as outside the scope of the certified question. Alternatively, the state strongly disputes the defendant's characterization of its presentation of the case to the jury, arguing that it never presented the charges to the jury as alternatives.

The "theory of the case" doctrine is rooted in the due process owed to criminal defendants. See, e.g., *Dunn* v. *United States*, 442 U.S. 100, 106, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979) ("[t]o uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process"); *State* v. *Robert H.*, 273 Conn. 56, 82, 866 A.2d 1255 (2005) ("[t]he 'theory of the case' doctrine is rooted in principles of due process of law"); see also, e.g., *State* v. *Scruggs*, 279 Conn. 698, 718, 905 A.2d 24 (2006) (under claim of insufficient evidence, "in order for any appellate theory to withstand scrutiny . . . it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt" (internal quotation marks omitted)).

We have at least once applied the theory of the case doctrine to a legal inconsistency analysis. In *Chyung*, the state argued on appeal that "the jury reasonably could have found that the defendant engaged in two separate acts," which would have rendered the verdicts consistent. *State* v. *Chyung*, supra, 325 Conn. 255. We reasoned that, because the state "never presented this theory to the jury during trial," it could not rely on

this theory to save the otherwise legally inconsistent verdicts. Id., 255–56. This analysis was consistent with the view previously expressed by the dissent in *King 2016* that "the legal consistency of the verdict must be considered in light of the state's theory of the case at trial." *State* v. *King*, supra, 321 Conn. 159 n.2 (*Robinson, J.*, dissenting). Together, these cases establish that the theory of the case doctrine may be defensively incorporated into a legal inconsistency claim; that is, a defendant may preclude the state from relying on a novel factual theory of the case on appeal because a new theory cannot transform inconsistent verdicts into consistent ones if it was not presented to the jury at trial.[5] In other words, the theory of the case doctrine is embedded in the legal inconsistency analysis to the extent necessary to tether the state to the factual theory it presented to the jury.[6]

The defendant in this case argues that, as in *Chyung*, the state cannot maintain that his convictions are consistent on appeal because its theory of the case at trial contemplated the charges as alternatives. We review the defendant's argument to the extent that it is encompassed within his legal consistency claim and is not an attempt to raise a distinct due process claim rooted in notice considerations. See footnote 6 of this opinion. Nevertheless, the defendant's argument is unpersuasive because there is an important distinction between this case and *Chyung*. In *Chyung*, the novel theory on which the state sought to rely was factual, not legal. The state argued to the jury that the defendant's conduct was one act but then sought to avoid legal inconsistency by arguing on appeal that the defendant's conduct could constitute two acts. *State* v. *Chyung*, supra, 325 Conn. 255–56. Here, there is no suggestion that the state has changed its *factual* theory of the case on appeal, for example, to assert that the defendant's conduct constituted multiple acts or encompassed multiple victims. Even if we assume that the defendant is correct that the state presented the charges as alternatives at trial, this would have been the state's *legal* theory of the case. We need not inquire whether this legal theory represented a litigation tactic or a misapprehension of our legal consistency jurisprudence. In this case, the trial court properly instructed the jury to consider each charge separately based on its conclusion that the charges of reckless assault and intentional assault were not legally inconsistent.[7] As we have often explained, the jury is bound to apply the law as instructed by the trial court. See, e.g., *State* v. *Reynolds*, 264 Conn. 1, 131, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Moreover, as explained, the defendant here does *not* raise a distinct claim that he lacked adequate notice that he could be convicted of both charges in light of the state's legal theory of the case at trial. See footnote 6 of this opinion.

In sum, the state is bound to the factual theory of

the case that it presented to the jury at trial. Here, there is no claim that the state changed its factual theory of the case postconviction. Moreover, as the trial court correctly explained, we have repeatedly stated that convictions of intentional and reckless assault are not legally inconsistent, and the court properly instructed the jury on this point. We presume that the jury followed the trial court's instructions.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* June 23, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Hereinafter, all references to intentional assault and reckless assault are, respectively, to intentional assault in the first degree and reckless assault in the first degree.

[2] The defendant did not raise a claim, before the trial court or on appeal, that his federal or state constitutional protections against double jeopardy precluded his convictions. Accordingly, we express no opinion on that subject.

[3] *Chyung* repeated the same language from *King 1990* identifying the relevant "result" as "the injury to the victim." (Internal quotation marks omitted.) *State* v. *Chyung*, supra, 325 Conn. 246, quoting *State* v. *King*, supra, 216 Conn. 593. However, contrary to the defendant's assertion, the inclusion of that quotation by this court in *Chyung* did not alter the relevant inquiry because *Nash* had clarified that language.

[4] The defendant also contends that, to the extent that we disagree with his interpretation of *Nash*, we should overrule *Nash* in favor of the language subsequently articulated in *Chyung*. Specifically, the defendant argues that *Nash* draws a distinction between the result associated with the mental state and the result of the conduct that is artificial because "an individual who intends to cause serious physical injury . . . will necessarily consciously and intentionally create a risk of death and, therefore, cannot create such a risk unintentionally." In addition, the defendant notes that the "serious physical injury" objective associated with intentional assault is defined as "physical injury *which creates a substantial risk of death*"; (emphasis added) General Statutes § 53a-3 (4); which is identical to the "risk of death" objective associated with reckless assault. We disagree for two reasons. First, § 53a-3 (4) does not limit its definition of "serious physical injury" to an injury that creates a substantial risk of death; rather, it continues, "*or* which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." (Emphasis added.) Second, contrary to the defendant's assertion, the rule from *Nash* does not lead to a bizarre result here. The jury reasonably could have found that the defendant intended to cause Holmes serious physical injury and, in doing so, disregarded the risk that such conduct would simultaneously create a risk that Holmes would die.

[5] The state contends that the court in *Chyung* "made a mistake" in "departing from" the majority in *King 2016* when it declined to uphold the convictions under the state's novel factual theory of the case. We disagree with this characterization of our jurisprudence. The majority in *King 2016* avoided binding the state to either of the disputed factual theories of the case by reasoning that, even under the theory of the case that the defendant claimed the state presented to the jury, the convictions were legally consistent pursuant to *Nash*. See *State* v. *King*, supra, 321 Conn. 144–45. The dissent in *King 2016* maintained that the state should have been bound to that theory on appeal, but it agreed with the majority that the convictions were consistent under that theory. Id., 158–59 and n.2 (*Robinson, J.*, dissenting). This court in *Chyung* instead concluded that the convictions were legally inconsistent; we were then required to determine whether the state could rely on a novel factual theory on appeal, which was a point of tension between the majority and the dissent in *King 2016*. The court in *Chyung* resolved this tension by concluding that permitting the state to rescue otherwise inconsistent convictions by presenting a novel factual theory on appeal would deprive the defendant of due process. *State* v. *Chyung*, supra, 325 Conn. 255–56. This holding was no mistake; rather, it employed long held and uncontroversial principles of due process jurisprudence.

[6] Our cases establish a second avenue through which the theory of the

case doctrine becomes relevant to a legal consistency claim. A defendant may raise an independent claim that he lacked adequate notice that he could be convicted of both charges due to some aspect of the state's legal or factual theory of the case as presented to the jury. See *State* v. *King*, supra, 321 Conn. 145, 148. This avenue is also rooted in the due process concerns that inform the theory of the case doctrine. Unlike the "defensive" posture, however, this posture is "offensive" in the sense that it provides a defendant with another independent avenue to challenge the convictions. In *King 2016*, we clarified that this due process analysis and the legal consistency analysis "are ultimately separate issues and reviewing courts should evaluate them as such." Id., 148; see also id., 159 n.2 (*Robinson, J.*, dissenting) (agreeing with majority that "the legal inconsistency and theory of the case issues in this appeal are doctrinally separate inquiries"). In the present case, although the defendant raised a separate due process claim before the Appellate Court; *State* v. *Alicea*, supra, 191 Conn. App. 435; he makes no such claim before this court; nor did he seek certification on such an issue.

[7] In addition, we need not consider whether *Chyung* would bar a novel legal theory raised by the state postverdict when the trial court *improperly* instructed the jury on the law. Here, the trial court *properly* instructed the jury to consider the legally consistent charges separately.

————————————————