******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* LAWRENCE
LEE HENDERSON
(SC 20688)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of home invasion in connection
with an incident in which the defendant and another man kicked down
the door to the victim's apartment, physically assaulted the victim, and
stole some of his belongings, the defendant appealed to this court. After
closing arguments, the trial court instructed the jury on home invasion,
the other offenses with which the defendant had been charged, including
burglary in the first degree, and certain lesser included offenses, includ-
ing burglary in the third degree as a lesser included offense of burglary
in the first degree. The jury did not reach a verdict after the first day
of deliberations. Before the second day of deliberations began, however,
the defendant was exposed to COVID-19, which he eventually con-
tracted. As a result, jury deliberations were delayed for twenty-five days.
During that time, two jurors became unavailable for the rescheduled
proceedings and were replaced by alternate jurors. When the proceed-
ings resumed, the court instructed that the remaining members of the
original jury were to disregard their earlier deliberations and that the
jury was to begin deliberations anew. Thereafter, the jury returned a
verdict finding the defendant guilty of home invasion but not guilty of
the other charges and the lesser included offenses. Defense counsel
indicated that he had no objections to the verdict, which the court
accepted. Defense counsel then moved for a mistrial, claiming that the
defendant was prejudiced by the twenty-five day interruption in the jury
deliberations. The court denied the motion and rendered judgment in
accordance with the jury's verdict. On the defendant's appeal from the
judgment of conviction, *held*:

1. The defendant could not prevail on his claim that this court should reverse
his conviction of home invasion or grant him a new trial on that charge
because the jury's verdicts of guilty of home invasion and not guilty of
the lesser included offense of burglary in the third degree were legally
inconsistent:

The defendant conceded that his challenge to the jury's legally inconsis-
tent verdicts was barred by this court's decision in *State* v. *Arroyo* (292
Conn. 558), in which this court held that legal inconsistency claims are
unreviewable on appeal, this court declined the defendant's invitation
to overrule or modify *Arroyo*, insofar as that decision was consistent
with United States Supreme Court precedent and that of the majority
of other jurisdictions, and this court emphasized that any inconsistency
in the jury's verdicts must be addressed by the trial court and the parties
before the jury has been discharged if anything is to be done about it.

Moreover, this court rejected the defendant's assertion that a trial court
is obligated to seek consistency in jury verdicts sua sponte, as a court's
direction to the jury to resolve any inconsistency through further delibera-
tions could result in another guilty finding that exposes a defendant to
a lengthier sentence.

In the present case, the legally inconsistent verdicts did not implicate
the defendant's constitutional rights, as nothing in the United States
constitution prohibits a court from accepting inconsistencies between
guilty and not guilty verdicts, and, because there was no constitutional
issue at stake or any nonspeculative reason to conclude that the defen-
dant was prejudiced by the jury's legally inconsistent verdicts, this court
would not upset those verdicts on appeal.

Insofar as this court declined to overturn or modify its conclusion in
*Arroyo* that there is no appellate remedy for inconsistent verdicts, the
defendant's alternative claim that the trial court committed plain error

by accepting the jury's inconsistent verdicts necessarily failed.

2. The trial court did not abuse its discretion in denying defense counsel's motion for a mistrial:

Although this court acknowledged the risk that pausing jury deliberations may increase the likelihood that jurors will forget the arguments of counsel and the trial court's instructions, and that jurors will rush to a consensus in order to conclude deliberations, it also recognized the unprecedented circumstances presented by the COVID-19 pandemic and the efforts that the trial court made in obtaining input from the parties on how to proceed once the pandemic impacted the trial while seeking to protect the parties' rights, which, taken together, led this court to conclude that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial.

Moreover, notwithstanding the defendant's claim that the trial court jeopardized the integrity of the proceedings by failing to canvass the jurors to confirm that they had not investigated or discussed the case during the delay, the record demonstrated that the trial court was mindful of and responsive to the parties' concerns during the delay, as the court considered, among other things, ways to conceal from the jury that it was the defendant who had tested positive for COVID-19 and the fact that he was incarcerated in the event that he were to appear remotely during the proceedings, how to notify the jury about scheduling changes, and having counsel review the language to be used when notifying the jurors of the delay.

Furthermore, this court's decision was in line with those of other jurisdictions, consistent with Connecticut case law concerning the management of trial delays, and, more specifically, in accord with the decisions of other jurisdictions addressing the legal impact of delays attributable to COVID-19, and, although a pause in jury deliberations can increase the likelihood that jurors may forget counsel's arguments or rush to be done with their responsibilities, under the unprecedented circumstances presented by the COVID-19 pandemic, there always was the risk of delays from the outset of the trial due to the pandemic.

Argued October 19, 2023—officially released March 19, 2024

*Procedural History*

Substitute information charging the defendant with four counts of the crime of burglary in the first degree, three counts each of the crimes of home invasion and assault in the second degree, two counts of the crime of robbery in the first degree and one count of the crime of robbery in the second degree, brought to the Superior Court in the judicial district of Middlesex, where the case was tried to the jury before *Oliver, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to one count of assault in the second degree; subsequently, the state filed an amended substitute information charging the defendant with one count each of home invasion, burglary in the first degree, robbery in the second degree and assault in the second degree; verdict and judgment of guilty of home invasion, from which the defendant appealed to this court. *Affirmed.*

*Pamela S. Nagy*, supervisory assistant public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Michael A. Gailor*, state's attorney, and *Kevin M. Shay*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In this direct appeal, the defendant, Lawrence Lee Henderson, asks us (1) to reexamine our decision in *State* v. *Arroyo*, 292 Conn. 558, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), holding that consistency in verdicts is immaterial and legally inconsistent verdicts are therefore not reviewable on appeal, and (2) to hold that the trial court abused its discretion by failing to declare a mistrial when he contracted COVID-19, which resulted in a twenty-five day interruption in jury deliberations. More specifically, the defendant first argues that we should overrule or modify *Arroyo* because the jury's verdict finding him guilty of home invasion, in violation of General Statutes § 53a-100aa (a) (1), was legally inconsistent with its verdict finding him not guilty of the lesser included offense of burglary in the third degree, in violation of General Statutes § 53a-103, even though the same facts and allegations underpinned both charges.[1] He also argues that the trial court abused its discretion in denying his motion for a mistrial, in which he contended that the twenty-five day pause after the jury began deliberating prejudiced him because of the risk that jurors would be exposed to improper outside influences or would forget evidence, counsel's arguments or the trial court's instructions. We disagree with both claims and affirm the trial court's judgment.

Our consideration of the defendant's claims is framed by the following procedural history, along with the following facts that the jury reasonably could have found. The defendant and another man referred to as "Dro" knocked on John Pillarella's apartment door in Middletown at about 11 p.m. on September 6, 2020, asking Pillarella if someone named Gina was there. Pillarella responded that Gina was not there and that the two men were at the wrong apartment. Pillarella's next door neighbor was a drug dealer, and people often would mistakenly knock on Pillarella's door at all hours of the night looking for his neighbor. Pillarella had not invited any guests to his apartment that evening, so he assumed that the defendant and Dro were looking for his neighbor. Pillarella shut his apartment door, and the defendant and Dro proceeded to kick it down. A struggle ensued between the defendant and Pillarella, who began bleeding heavily from his head. Meanwhile, Dro went through the apartment and found Pillarella's wallet. After Pillarella refused to disclose the PIN number for his debit card, the defendant and Dro took "a few dollars" from the wallet, along with two cell phones.

After the defendant and Dro fled the scene, Pillarella asked a neighbor for help. A person at the scene found a police sergeant on patrol, who called for additional police, medical aid, and a K-9 unit. Although the K-9 unit could not find Dro, they did find the defendant hiding behind nearby bushes. Later, at the police sta-

tion, the defendant admitted that he had been looking for drugs when he knocked on Pillarella's door.

In an amended long form information, the state charged the defendant with one count each of home invasion, in violation of § 53a-100aa (a) (1), burglary in the first degree, in violation of General Statutes § 53a-101 (a) (3), robbery in the second degree, in violation of General Statutes § 53a-135 (a) (1) (A), and assault in the second degree, in violation of General Statutes § 53a-60 (a) (7). On September 21, 2021, after eight months of pretrial incarceration, the defendant filed a speedy trial motion. The trial court granted this motion on September 29, 2021, and the case was tried to a jury in October, 2021. The court instructed the jury to return verdicts on each of the four charged counts and, if it found the defendant not guilty of any of those charges, to also return a verdict on the corresponding lesser included offense for three of the four counts. Specifically, the court charged the jury on burglary in the second degree, in violation of General Statutes § 53a-102, as a lesser included offense of home invasion; burglary in the third degree, in violation of § 53a-103, as a lesser included offense of burglary in the first degree; and assault in the third degree, in violation of General Statutes § 53a-61, as a lesser included offense of assault in the second degree in violation of § 53a-60 (a) (7). The court did not charge the jury on any lesser included offense of robbery in the second degree. Both parties agreed to the trial court's jury instructions regarding the lesser included offenses. Neither party requested that the trial court instruct the jury about any other lesser included offenses.

After the defendant's exposure to and ultimate contraction of the COVID-19 virus during trial, which resulted in a twenty-five day interruption in jury deliberations, the jury found the defendant guilty of home invasion but not guilty of first degree burglary, second degree burglary, third degree burglary, second degree robbery, second degree assault, and third degree assault.[2] Defense counsel did not object to the jury's verdict prior to the court's acceptance of the verdict and its discharge of the jury. The trial court sentenced the defendant to a term of fifteen years of imprisonment followed by ten years of special parole. The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3). We will discuss additional facts and procedural history as necessary.

I

We begin with the defendant's claim that we should vacate his home invasion conviction because the jury's guilty verdict on that count was legally inconsistent with its not guilty verdict on the third degree burglary count. The defendant argues that we should either vacate the home invasion conviction or grant him a new trial on that count because, as charged in this case,

the jury had to find him guilty of each of the elements of third degree burglary before it could find him guilty of home invasion, yet the jury found him not guilty of third degree burglary and still found him guilty of home invasion.[3] The defendant concedes that *Arroyo* prevents review of this claim on appeal and thus asks us to overturn or modify *Arroyo*. Specifically, he contends that we should overrule *Arroyo* and hold that inconsistent verdicts are unreliable because they reflect mistake, confusion, jury nullification, or potential animus toward the defendant, and that upholding unreliable verdicts constitutes a miscarriage of justice.[4] Alternatively, the defendant argues that it was plain error for the trial court to render judgment in accordance with the jury's verdict because the verdict was inconsistent on its face and resulted in manifest injustice, as the defendant stands convicted of home invasion despite the jury's finding that the state did not meet its burden of proving the lesser included offense of third degree burglary. See Practice Book § 60-5.

The state maintains that logical and compelling reasons underlie the *Arroyo* rule. The state argues that reviewing inconsistent verdicts on appeal would require that appellate courts speculate about the jury's reasoning, despite long-standing policies discouraging such conjecture. Further, the state contends that it would be improper for the trial court, sua sponte, to send the jury back to deliberate following an inconsistent verdict because of the risk that the jury may find the defendant guilty of additional charges. In the state's view, only if the defendant had requested that the trial court decline to accept the jury's inconsistent verdicts could the court have sent the jury back for further deliberations. Finally, the state argues that the trial court did not commit plain error by accepting the inconsistent verdicts, as this approach conforms with both Connecticut and United States Supreme Court case law.

We agree with the state and adhere to our conclusion in *Arroyo* that there is no appellate remedy for an inconsistent verdict. If there is anything for the parties or the trial court to do to address an inconsistency in a jury's verdict, it must be done before the jury has been discharged. It follows necessarily that the trial court did not commit plain error in accepting the verdicts in this case.

At the core of both parties' arguments on this first issue is our decision in *Arroyo*, in which we declared that "claims of legal inconsistency between a conviction and an acquittal are not reviewable." *State* v. *Arroyo*, supra, 292 Conn. 586. Explicitly stating that we found the United States Supreme Court's decision in *United States* v. *Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), persuasive, we quoted *Powell*'s reasoning at length: "[I]nconsistent verdicts . . . should not necessarily be interpreted as a windfall to the

[prosecution] at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the [greater] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the [prosecution] has no recourse if it wishes to correct the jury's error; the [prosecution] is precluded from appealing or otherwise upsetting such an acquittal by the [c]onstitution's [d]ouble [j]eopardy [c]lause." (Footnote omitted; internal quotation marks omitted.) *State* v. *Arroyo*, supra, 585, quoting *United States* v. *Powell*, supra, 65. On the other hand, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (Internal quotation marks omitted.) *State* v. *Arroyo*, supra, 585, quoting *United States* v. *Powell*, supra, 67. With this rationale in mind, we must consider whether the defendant has advanced "the most cogent reasons and inescapable logic" that would compel us to overrule or modify *Arroyo*. (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 519, 949 A.2d 1092 (2008); see id. (discussing "the significance of stare decisis to our system of jurisprudence" (internal quotation marks omitted)); see also *State* v. *Nash*, 316 Conn. 651, 659, 114 A.3d 128 (2015); *State* v. *Ramirez*, 292 Conn. 586, 590–91, 973 A.2d 1251 (2009). We conclude that he has not.

Legally inconsistent verdicts have vexed courts for some time. See *Steckler* v. *United States*, 7 F.2d 59, 60 (2d Cir. 1925). An undeniable tension exists when appellate courts confront inconsistent verdicts on appeal because they "present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored." *United States* v. *Powell*, supra, 469 U.S. 65; see also *Dunn* v. *United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932) ("[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt" (internal quotation marks omitted)). Having freshly considered our precedent in response to the defendant's arguments, for the reasons stated in *Powell* and in our own case law, we reaffirm our decision in *Arroyo* that appellate courts cannot and should not review inconsistent verdicts on appeal.

Although the role of appellate courts is to remedy legal errors, we are keenly aware of our limitations in that pursuit. We have acknowledged the conundrum that inconsistent jury determinations create on appeal: "[w]hen a jury has rendered legally inconsistent verdicts, there is no way for the reviewing court to know which charge the jury found to be supported by the evidence." *State* v. *Chyung*, 325 Conn. 236, 247, 157

A.3d 628 (2017). In most cases, we have no way of knowing if the jury's verdict was an unintentional error or a conscious choice of leniency.[5] See id., 247 n.7; see also *McElrath* v. *Georgia*, U.S. , 144 S. Ct. 651, 659, L. Ed. 2d (2024) ("[w]e have long recognized that, while an acquittal might reflect a jury's determination that the defendant is innocent of the crime charged, such a verdict might also be the result of compromise, compassion, leniency, or misunderstanding of the governing law" (internal quotation marks omitted)), quoting *Bravo-Fernandez* v. *United States*, 580 U.S. 5, 10, 137 S. Ct. 352, 196 L. Ed. 2d 242 (2016). Reviewing inconsistent verdicts on appeal risks unduly speculating about the jury's intent in delivering its decision, despite precedent establishing that the court should not insert itself into jury deliberations. See *United States* v. *Powell*, supra, 469 U.S. 66 ("an individualized assessment [by a court] of the reason for the inconsistency would be based . . . on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake").

Both this court and the United States Supreme Court, in settling on the rule that inconsistent verdicts are unreviewable on appeal, have also taken account of "the [prosecution's] inability to invoke review" of a jury's finding of not guilty under the United States constitution's double jeopardy clause once the trial court accepts a verdict. Id., 66; accord *State* v. *Arroyo*, supra, 292 Conn. 585. Given the "uncertainty" inherent in trying to explain simultaneous and inconsistent verdicts of guilty and not guilty, and "the fact that the [prosecution] is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the [prosecution] militates against review of such convictions at the defendant's behest." (Citation omitted.) *United States* v. *Powell*, supra, 469 U.S. 65; see also *State* v. *Arroyo*, supra, 585.

Therefore, like the United States Supreme Court, we have consistently maintained that the "inconsistency of the verdicts is immaterial." *State* v. *Rosado*, 178 Conn. 704, 708–709, 425 A.2d 108 (1979); see also *State* v. *Gaston*, 198 Conn. 490, 493 n.1, 503 A.2d 1157 (1986). In fact, "this court never has set aside a verdict on the ground that a conviction on one charge was legally or logically inconsistent with an acquittal on another charge." *State* v. *Arroyo*, supra, 292 Conn. 583. Rather, we have made clear that, "[w]hile symmetry of results may be intellectually satisfying, it is not required." (Internal quotation marks omitted.) *State* v. *Colon*, 257 Conn. 587, 603, 778 A.2d 875 (2001). As the defendant concedes, Connecticut law pertaining to inconsistent verdicts is in line with that of the majority of jurisdictions.

We are also mindful of a defendant's precarious position when a jury delivers an inconsistent verdict. It is possible that, if the trial court focuses the jury's attention on, and directs the jury to resolve, the inconsistency, further deliberation might lead to another not guilty finding. However, it is also possible that further deliberation might result in another finding of guilt, perhaps exposing the defendant to a lengthier sentence. Given these stakes, we reject the defendant's argument that a trial court has an obligation to seek consistency in the jury's verdicts, sua sponte. In fact, it would be error for the court to do so. Nor can we countenance the state's forcing the issue by requesting that the trial court direct the jury to deliberate further in pursuit of consistent verdicts. See *Givens* v. *State*, 449 Md. 433, 460, 144 A.3d 717 (2016) ("When inconsistent verdicts are rendered, the [trial court] may not, sua sponte, send the jury back to resolve the inconsistency, because it is the defendant who is entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal. By the same token, the prosecutor may not ask to have the jury sent back to resolve the inconsistency, because it is the defendant, once again, who is entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal.").

The verdicts in the present case differ from those in *Chyung*. In *Chyung*, we were confronted not with one guilty verdict and one not guilty verdict but, rather, with two contradictory guilty verdicts, each of which required a finding of a mutually exclusive state of mind. See *State* v. *Chyung*, supra, 325 Conn. 239–40 (jury found defendant guilty of murder and manslaughter in first degree with firearm). We held in *Chyung* that inconsistent guilty verdicts are intolerable in part because of "important constitutional due process implications . . . ." Id., 253. In fact, it is these constitutional implications that help explain why we concluded in *Chyung* that the defendant did not need to raise the issue of inconsistent guilty verdicts before the jury was discharged to be able to challenge the verdicts in a motion for a new trial and then ultimately on appeal. Id., 253–54. Indeed, we have entertained such claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), even if they were not raised in the trial court at all. See *State* v. *Chyung*, supra, 249 n.9; see also *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993) (when defense neither objected to jury instructions on offenses with mutually exclusive states of mind nor objected to trial court's acceptance of verdicts, court reviewed unpreserved claim pursuant to *Golding*). Finally, it is these constitutional implications that compelled us to direct courts and counsel that, to avoid the possibility that the verdicts will have to be vacated and a new trial ordered, "either the defendant or the state should object to the verdicts before the jury has been

discharged, so that the jury may be properly instructed and continue its deliberations." *State* v. *Chyung*, supra, 253.

In contrast, inconsistent verdicts like those in the present case and in *Arroyo* do not implicate a defendant's constitutional rights. Nothing in the federal constitution prohibits a court from accepting the inconsistencies between guilty and not guilty verdicts, as the jury returned here. See *United States* v. *Powell*, supra, 469 U.S. 65. Because of this fundamental difference between the verdicts at issue in *Chyung* and those we confront in the present case, we reiterate today what we have already indicated in *Arroyo*: with no constitutional issue at stake, and without a nonspeculative reason by which we can conclude that a defendant was prejudiced, we will not upset inconsistent verdicts on appeal.

In the present case, the parties do not dispute that the jury returned legally inconsistent verdicts. See footnote 2 of this opinion. Therefore, the defendant's claim is not reviewable pursuant to *Arroyo*. More particularly, we will not direct a judgment of acquittal or order a new trial on the home invasion count, notwithstanding the parties' agreement that a guilty verdict on that count and a not guilty verdict on the lesser offense of third degree burglary are legally inconsistent. Any concern about the verdicts or request for consistency should have been raised before the trial court discharged the jury. Following the jury's announcement of its verdicts, the trial court explicitly asked defense counsel whether he had anything further to address before the court accepted the verdicts. Because defense counsel responded that he did not have anything else to discuss, we cannot give further consideration to the defendant's claim. See *State* v. *Arroyo*, supra, 292 Conn. 583.

Because we decline to overturn or modify *Arroyo*, the defendant's inconsistent verdicts claim also fails under the plain error standard. See Practice Book § 60-5. The plain error doctrine is an "extraordinary remedy," to correct injustices that are of "monumental proportion . . . ." *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). On appeal, the court should find plain error only when "the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id. The court gave defense counsel the opportunity to raise any concerns before accepting the verdicts, but he declined. In doing so, the trial court followed *Arroyo* and *Powell*. Therefore, the court's acceptance of both the jury's findings with respect to home invasion and third degree burglary did not constitute plain error.

## II

We now consider the defendant's claim that the trial court abused its discretion in denying the defendant's

mistrial motion after the defendant's exposure to and contraction of the COVID-19 virus resulted in a twenty-five day interruption in the jury's deliberations. The following facts are relevant to this claim.

On September 20, 2021, amid the COVID-19 pandemic, the defendant filed a motion for a speedy trial, which the trial court granted on September 29, 2021, the first day the parties began selecting a jury. The evidentiary portion of the trial began on October 12, 2021. The state presented twenty-one exhibits and called five witnesses to testify. The defendant presented no evidence.

After both parties presented closing arguments on Thursday, October 14, 2021, jury deliberations began that day and lasted a few hours. At the end of the day, the jury had not yet reached a verdict, and, because earlier scheduling conflicts made it such that deliberations could not resume that Friday, the trial adjourned until Monday, October 18, 2021. However, before the jury was to reconvene, the court was notified that, while in the custody of the Department of Correction, the defendant had come into close contact with someone who had tested positive for COVID-19. The court informed the parties that, under then existing protocols to prevent the spread of COVID-19, the defendant would need to be quarantined until at least October 27, 2021, and, therefore, the court had to delay jury deliberations until then. On October 26, 2021, the court reported that, sometime in the interim, the defendant had tested positive for COVID-19, forcing the trial court to continue the pause in jury deliberations until November 8, 2021.

Also on October 26, 2021, defense counsel orally moved for a mistrial, asserting that a delay of twenty-five days during jury deliberations prejudiced the defendant because the jury might not be able to remember the court's detailed jury instructions or the arguments advanced by both parties. The court asked defense counsel how to reconcile the defendant's initial speedy trial motion with the motion for a mistrial. Defense counsel responded that the speedy trial motion should not bear on the court's decision regarding the mistrial motion because of the unusual circumstances presented.

The state countered that the speedy trial motion was relevant to the court's consideration of the mistrial motion because the defendant had filed the speedy trial motion while the pandemic was ongoing. The state reasoned that the defendant knew that there was always a risk of trial delays due to the pandemic. The state also argued that no legal error had occurred because the situation at hand did not involve the affirmative conduct of a trial participant, as required by Practice Book § 42-43. Finally, the state emphasized that the risk of the jury's forgetting key arguments of counsel was minimized by the fact that the evidence took only a

few days to present, and a key piece of evidence—a recording of a police interview with the defendant, which was played during the trial—was available for the jury to view again during deliberations.

The court denied the motion for a mistrial, explaining that the defense had failed to show either substantial or irreparable prejudice because of the delay in jury deliberations. The court stressed that, in some trials, delays take place but that not all delays prejudice the defendant. Also, under these circumstances, by the time the defense moved for a mistrial, the court had already learned of one juror's unavailability for the rescheduled proceedings. Therefore, the trial court reasoned, deliberations would have to start anew anyhow, ameliorating concerns that the jury would rely on its initial discussions a few weeks earlier in an effort to finish its trial obligations. Last, the court emphasized that the jury would have the court's instructions for reference and would be able to view the defendant's police interview again, if necessary.

When the jury reconvened on November 8, 2021, an additional member of the original jury had been excused because he was unavailable for the rescheduled trial dates, and, therefore, two alternate jurors participated in the reconvened deliberations. As it had indicated it would, the court instructed the jury that, with two new panel members joining for deliberations, "[e]ach member of the original deliberating jury must set aside and disregard whatever may have occurred" and "start [the] deliberations over again." The trial court also explained that, because of the delay in deliberations, the jury could request to review a recording of any witness' testimony, if needed. Later that day, the jury returned its verdict, finding the defendant guilty of home invasion and not guilty of the other charges, as well as the three lesser included offenses.

The defendant argues that the trial court should have granted the mistrial motion because the twenty-five day interruption in the jury's deliberations prejudiced him. The defendant claims that a lengthy delay at such a critical point in the trial inevitably caused jurors to forget counsel's arguments as well as the court's instructions. Last, the defendant contends that the trial court jeopardized the integrity of the proceedings by failing to canvass the jurors upon reconvening to ensure that they were prepared to begin deliberations anew with the two alternate jurors and to confirm that they had not investigated or discussed the case in the interim.

The state contends that the defendant's concerns are speculative and that he has not identified any conduct indicating that factors external to the case undermined the verdicts. Rather, the state argues that the trial court acted within its discretion when it denied the mistrial motion, navigating the unprecedented challenges posed by a worldwide pandemic and searching for a way to

continue the proceedings safely while remaining cognizant of both parties' rights and concerns.[6]

"Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom, which results in substantial and irreparable prejudice to the defendant's case." Practice Book § 42-43. We review a trial court's ruling on a motion for a mistrial under the abuse of discretion standard. See, e.g., *State* v. *Peeler*, 271 Conn. 338, 415–16, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). When reviewing a ruling on a mistrial motion, we must ask whether the trial court considered the totality of the circumstances in arriving at its decision. See, e.g., *State* v. *Anderson*, 295 Conn. 1, 9, 988 A.2d 276 (2010) (because power to declare mistrial "ought to be used with the greatest caution," trial judges must "tak[e] all the circumstances into consideration" (internal quotation marks omitted)). Further, our review "must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018).

The risks inherent in an interruption of jury deliberations are not lost on us. We appreciate the defendant's argument that, despite the best efforts of the trial court and counsel for both parties, pausing jury deliberations may increase the likelihood that jurors will forget the nuances of each party's arguments or tempt jurors to rush to a consensus and be done with deliberations once and for all. See, e.g., *People* v. *Breceda*, 76 Cal. App. 5th 71, 95, 290 Cal. Rptr. 3d 899 (2022) (acknowledging risks created by interruption of more than seventy days during trial but reasoning that, "although the delay was long, it was unavoidable due to the pandemic"), review denied, California Supreme Court, Docket No. S274137 (June 15, 2022). We recognize these risks, but we also recognize the unprecedented circumstances presented by the COVID-19 pandemic. Throughout this period of uncertainty, just as there were innumerable disruptions in government and in society generally, there was always a risk of COVID-19 infections causing delays from the outset of the trial. This reality, combined with the trial court's efforts to obtain input from both parties on how to proceed once the pandemic did in fact impact the trial while it assiduously sought to protect the rights of both parties, leads us to conclude that the trial court did not abuse its discretion in denying the motion for a mistrial. We observe that the defense failed to make any showing of prejudice or raise any serious suspicion of identifiable harm resulting from the delay.

Although the defendant suggests that it would have been ideal for the trial court to canvass each juror when the

jurors reconvened to ensure that they had not discussed the case or investigated it on their own, the record demonstrates that the trial court was mindful of and responsive to concerns from both parties as they navigated the deliberations delay. These efforts included, but were not limited to, discussing hybrid trial options,[7] ways to conceal that the defendant was incarcerated if he were to appear remotely and was the person who had tested positive for COVID-19, how to notify the jury about the scheduling change, and having counsel review the specific language the courtroom clerk would use when notifying jurors about the trial delay.

Our decision today is consistent with Connecticut case law concerning a court's management of trial delays, which stresses the importance of considering the circumstances of each case in their entirety when determining whether the trial court properly exercised its discretion in ruling on a mistrial motion. See *State* v. *Gonzalez*, 315 Conn. 564, 582–85, 109 A.3d 453 ("[i]n light of all the circumstances," trial court did not abuse its discretion in excusing two jurors and beginning deliberations anew sixteen days after close of evidence), cert. denied, 577 U.S. 843, 136 S. Ct. 84, 193 L. Ed. 2d 73 (2015). Our conclusion is in line with the decisions of other courts across the nation that have also had to grapple with the legal impact of delays attributable to the pandemic. See, e.g., *People* v. *Breceda*, supra, 76 Cal. App. 5th 95 (trial court's pausing proceedings for more than seventy days was not an abuse of discretion because COVID-19 pandemic provided good cause, and defendant failed to demonstrate actual prejudice from delay); *State* v. *Brown*, 996 N.W.2d 691, 701–702 (Iowa 2023) (trial court did not abuse its discretion by continuing proceedings for nine days due to juror's having tested positive for COVID-19, as defendant's concerns about jury rushing through deliberations and forgetting evidence were speculative); see also *United States* v. *Frazier*, 625 F. Supp. 3d 752, 755 (M.D. Tenn. 2022) (District Court denied motion for mistrial despite COVID-19 having delayed trial at least four times, reasoning that, "to the extent that [the] [d]efendants complain about jurors forgetting the testimony of witnesses due to the mere passage of time, the same argument could have been made had the trial proceeded without any hiccups, or in any lengthy trial for that matter"). Given all of the circumstances surrounding the present case, including the precautions taken by the trial court, we cannot say under governing case law that the trial court abused its discretion.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] This court has previously described three separate categories of "claims involving an inconsistency between a conviction and an acquittal": (1) factually inconsistent verdicts, which occur when "the jury found that evidence that was insufficient to support a set of facts necessary to convict on one offense was sufficient to support the same set of facts necessary to convict on another offense"; *State* v. *Arroyo*, supra, 292 Conn. 580–81; (2) legally inconsistent verdicts, which involve a "conviction of one offense and an

acquittal of a lesser included offense"; id., 581; and (3) logically inconsistent verdicts, which are verdicts that imply that "the jury's conclusion was not reasonably and logically reached." (Internal quotation marks omitted.) Id., 578. In *Arroyo*, we determined that factual, legal, and logical inconsistencies that may arise between convictions and acquittals are all permissible. See id., 583–84. The defendant in the present case has used the phrase "legally inconsistent verdicts" to describe his conviction of home invasion and acquittal of third degree burglary. Because of our disposition of this argument, and because the parties do not dispute that the jury's verdicts were inconsistent, we need not categorize the jury's verdicts.

Our case law has also distinguished between "inconsistent verdicts," which the trial court may accept, and "inconsistent convictions," which the trial court may not accept. Inconsistent verdicts refer to jury findings of guilty and not guilty that contradict each other. Inconsistent convictions arise, for example, when the jury finds the defendant guilty of multiple offenses, "each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction . . . ." *State* v. *King*, 216 Conn. 585, 594, 583 A.2d 896 (1990); see *State* v. *Arroyo*, supra, 292 Conn. 583 n.21 ("our holding is limited to cases involving an apparent inconsistency between a *conviction and an acquittal* and does not apply to inconsistent *convictions*" (emphasis in original)); *State* v. *Knight*, 266 Conn. 658, 667, 835 A.2d 47 (2003) ("[T]he defendant was convicted of one offense and acquitted of the other. [Because the court is] not dealing with a situation in which the defendant is convicted of two offenses, and one conviction negates the other, the verdicts are not legally inconsistent in the usual sense." (Internal quotation marks omitted.)); see also *United States* v. *Powell*, 469 U.S. 57, 69 n.8, 105 S. Ct. 471, 83 L. Ed. 2d 464 (1984) (in case involving inconsistent verdicts, court made clear that "[n]othing in [its] opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other"); *State* v. *DeCaro*, 252 Conn. 229, 242, 244 n.13, 745 A.2d 800 (2000) (distinguishing between cases in which "a verdict of guilty on one count . . . appeared to be inconsistent with a verdict of acquittal on another count," and cases involving verdicts that contradict each other or create a "legal impossibility" (internal quotation marks omitted)).

[2] Both parties agreed that the trial court would instruct the jury that third degree burglary was a lesser included offense of first degree burglary. The court did not charge the jury that third degree burglary was also a lesser included offense of home invasion. The state concedes on appeal that third degree burglary is a lesser included offense of home invasion, even though the trial court did not charge the jury to that effect. We accept the state's concession without further examination, along with the legal conclusion that follows from it, namely, that the jury's verdicts of guilty of home invasion and not guilty of third degree burglary were legally inconsistent.

[3] The jury found the defendant not guilty of first degree and third degree burglary. Because the jury found the defendant guilty of home invasion, consistent with the court's instructions, the jury did not consider the second degree burglary charge.

[4] As *Powell* makes clear, the United States constitution does not require appellate review of inconsistent verdicts. Because no other source of law prohibits our courts from accepting inconsistent verdicts, we, like the United States Supreme Court, essentially adopted the rule in *Arroyo* pursuant to "our supervisory powers over the . . . criminal process." *United States* v. *Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed. 2d 464 (1984).

[5] Because of the way that the parties agreed that the trial court would charge the jury, the present case is not the archetypal inconsistent verdict case. In particular, the trial court did not directly charge the jury that third degree burglary was a lesser included offense of home invasion. Instead, it charged that second degree burglary was a lesser included offense of home invasion and that third degree burglary was a lesser included offense of first degree burglary. Under these circumstances, it is difficult to infer either that the jury was confused, that the jury consciously contravened the court's instructions, or that the jury was undertaking a conscious choice of lenity.

[6] As we deliver this opinion, the health concerns posed by COVID-19, while debated by some, remain part of the public consciousness. We pause to describe the surrounding events that gave rise to the trial delay. COVID-19, also known as coronavirus, is a "respiratory disease caused by a virus that is transmitted easily from person to person and can result in serious illness or death." *Casey* v. *Lamont*, 338 Conn. 479, 482, 258 A.3d 647 (2021).

In 2020, the virus spread rapidly, eventually amounting to a global pandemic. See id., 482–83. Government officials in Connecticut and virtually everywhere else ordered lockdowns and other measures to "abate the rate of infection . . . ." Id., 482. At the height of the pandemic, many governmental operations had to be curtailed significantly, including jury trials. See *State* v. *Washington*, 345 Conn. 258, 285, 284 A.3d 280 (2022). Although ultimately not dispositive of the defendant's claim of error, it should be lost on no one that, during this lengthy pandemic, when jury trials resumed, court staff, jurors, witnesses, and attorneys all put their health at risk to honor the rights of defendants to be tried by a jury of their peers.

[7] The state proposed multiple ways to continue the proceedings while the defendant was quarantined, such as remote access via videoconference or by bringing him to the courthouse wearing an N95 mask. The defendant declined the option of participating in the proceedings through a video call. Ultimately, the trial court decided to postpone the trial until the defendant could personally appear in the courtroom safely while the jury deliberated.

---